Victor C. Bushell (VB )
Christopher J. Sovak (CS 3164)
Cem Ozer (CO 1718)
Joseph E. Gulmi (JG 5738)
BUSHELL, SOVAK, OZER & GULMI LLP
60 East 42nd Street, Suite 2925
New York, New York 10165
Tel: 212-949-4700
vbushell@bushellsovak.com
csovak@bushellsovak.com
cozer@bushellsovak.com
jgulmi@bushellsovak.com

*Attorneys for Plaintiff*
*Farberware Licensing Company, LLC*

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| FARBERWARE LICENSING COMPANY, LLC, | : | |
| | : | |
| Plaintiff, | : | **09- CV-2570 (HB and MHD)** |
| | : | |
| -against- | : | **ECF CASE** |
| | : | |
| MEYER MARKETING CO., LTD., MEYER INTELLECTUAL PROPERTIES, LTD., and MEYER CORPORATION, US, | : : : : | **DECLARATION OF CHRISTOPHER J. SOVAK IN OPPOSITION OF DEFENDANTS' MOTION** |
| Defendants. | : | **TO TRANSFER** |
| | : | |

I, CHRISTOPHER J. SOVAK, declare as follows:

1. I am a member of Bushell, Sovak, Ozer & Gulmi, LLP and counsel for Farberware Licensing Company, LLC ("FLC"), Plaintiff in the captioned proceeding. I submit this Declaration in support of FLC's Opposition to MUS and MIP's motion to transfer the present action to the Eastern District of California pursuant to 28 U.S.C. §1440(a). I am fully familiar with the facts and circumstances set forth herein and have personal knowledge of same except where otherwise stated.

2. The New York action (the instant action) was filed on March 20, 2009, served on Meyer Corporation, US ("MUS") on March 23, 2009, and served on Meyer Marketing Company, Ltd. ("MMC") and Meyer Intellectual Property, Ltd. ("MIP") on or about March 26, 2009 (MMC, MIP and MUS are collectively referred to herein as "Meyer"). (Attached hereto as Ex. A is a true and correct copy of the Complaint filed in this action (without exhibits)). FLC also provided Meyer's counsel with a courtesy copy of the Summons and Complaint on March 23, 2009.

3. The instant action seeks termination of the License Agreement between FLC and Meyer due to Meyer's repeated intentional and material breaches of the same. The License Agreement at issue is attached as Exhibit A to the accompanying Declaration of Jan Ratushney (the "Ratushney Decl."). While Meyer's breaches of the License Agreement with regard to the enamel tea kettles at issue are addressed in an action filed by MUS in an action in the Eastern District of California, the New York action is much broader than that action. In the instant action, in addition to seeking termination of the License Agreement, FLC has asserted trademark infringement claims against Meyer for its improper use of the Farberware name and mark in connection with the promotion of its own Prestige brand of kitchen goods. FLC is also seeking a preliminary injunction in that suit with regard to that infringement. Furthermore, this suit addresses Meyer's multiple breaches of the notice and approval provisions of the License Agreement with regard to a full range of products and packaging and promotional materials not just those related to the enamel kettles. (*See generally*, Ex. A).

4. At the time FLC commenced the instant action, MUS had a pending action in California against two parties unrelated to FLC, Alfay Designs, Inc. ("Alfay") and Evco International, Inc. ("Evco"), alleging that these entities tortuously interfered with MUS's contractual rights under the License Agreement by selling enamel tea kettles with stainless

steel substrates. (Attached hereto as Ex. B is a true and correct copy of MUS's Complaint filed in the Eastern District of California, Case No. 2:09-CV-297). FLC was not originally named as a defendant in MUS's lawsuit. After MUS was served in the instant action on March 23, 2009, MUS amended its complaint in California to add FLC as a defendant on March 27, 2009. (Attached hereto as Ex. C is a true and correct copy of MUS's Amended Complaint filed in the Eastern District of California, Case No. 2:09-CV-297).

5. The Court originally scheduled a hearing on FLC's motion for a preliminary injunction in the New York action for April 15, 2009, but on MUS and MIP's application, the Court adjourned the hearing for six weeks until June 1, 2009, and further granted their request for a full evidentiary hearing and limited expedited discovery. (Attached hereto as Ex. D is a true and correct copy of correspondence from the parties to the Court and Order dated April 8, 2009). [1] The Court also ordered that FLC post a $5,000 bond in relation to its requested preliminary injunction which FLC has done. (Attached hereto as Ex. E is a true and correct copy of the Court's Order.).

6. MUS originally instituted its California action in an effort to improperly transfer disputes to California that it was obligated to resolve in New York pursuant to the License Agreement dated June 27, 1996. When it MUS filed its original complaint in the California action against Evco International, Inc. ("Evco") and Alfay Designs, Inc. ("Alfay"), it intentionally left FLC out of the lawsuit. It was MUS's intent was to inveigle FLC to abandon attempts to resolve the outstanding disputes between them in New York and seek to intervene in the California action. MUS admitted to as much in its Memorandum of Law in Support of MUS and MIP's instant motion to transfer the New York Action to the Eastern District of California. *See* MUS's Memorandum of Law filed in

---

[1] At no time while Defendants were seeking the extension of time for the hearing or expedited discovery did it inform the Court, or FLC, that it intended to move to transfer this matter to California.

this action at pgs. 1-2. When its plan failed, MUS amended its complaint in the California action to name FLC as a defendant.

7. When MUS originally instituted this action in California against Alfay and Evco without notice to or consent from FLC, it materially breached Article 12.2 of the License Agreement. (*See*, Ratushney Decl., Ex. A, ¶ 12.2.). MUS merely compounded this breach when it amended its complaint to name FLC as a defendant in the action, after MUS's repudiation of the dispute resolution provisions of the License Agreement.

8. Although MUS and MIP seek to transfer this action to California, FLC has filed a motion to dismiss MUS's California action for lack of jurisdiction and to transfer the California action to this Court. (Attached hereto as Exs. F and G, respectively, are a true and correct copy of the Memorandum of Law and my Declaration in support of that motion.). In support of FLC's motion to dismiss and transfer, both Alfay and Evco submitted Declarations. These Declarations set forth facts weighing in favor of FLC's motion to transfer the California action to this Court and in favor of FLC's opposition to MUS and MIP's instant motion to transfer. (Attached hereto as Exs. H and I, respectively, are a true and correct copy of the Declaration of Al Smaldone and the Declaration of Edward Sandberg).

9. Similarly, Alfay's counsel has informed me that it is moving to dismiss the action against it in California for lack of jurisdiction as well.

10. In contrast, Alfay, FLC, and Evco all consent to jurisdiction in the Southern District of New York. MUS and MIP have also submitted to the jurisdiction of this Court, as they specifically requested this Court to order and oversee expedited discovery relating to FLC's request for a preliminary injunction. (*See*, Ex. D.). As a result of the Courts' Order, MIP and MUS have served FLC with twenty two (22) wide ranging document requests and twenty six (26) interrogatories. (Attached hereto as Ex. J are a true and correct copy of the

Interrogatories and Document Requests). MUS and MIP have also noticed the deposition of FLC's consumer survey expert, and served him with a number of documents requests as well. (Attached hereto as Ex K is a true and correct copy of MUS and MIP's Notice of Deposition.).

11. Among the numerous factually unsupported misrepresentations made by MUS and MIP in their motion to transfer, one of the most egregious is its allegation that FLC, not Meyer, unilaterally abandoned the dispute resolution process under the License Agreement. Notably, MUS and MIP cite no documents or other evidence to support this claim. In contrast, as demonstrated in the documents attached hereto, FLC made every attempt to address all the disputes subject to the instant litigation with Meyer through the dispute resolution process, yet Meyer either simply ignored FLC's efforts, or in the case of the tea kettles, engaged in a transparent bad faith effort to frustrate and sabotage the dispute resolution process at every turn. It was only after it became apparent that Meyer had completely repudiated the dispute resolution process that FLC was forced to bring the present lawsuit to protect its valuable Intellectual Property. Meyer's bad faith actions pursuant to the dispute resolution process serve as one of the bases for FLC's requested relief of the termination of its License Agreement.

12. As set forth in detail in my declaration in support of FLC's Order to Show Cause seeking a preliminary Injunction against Meyer filed with this Court, and the documents and correspondence attached thereto as exhibits, Meyer completely ignored FLC's efforts to address its infringing use the FARBERWARE name and mark to promote its own Prestige® brand of kitchen goods. FLC attempted to initiate the dispute resolution process with Meyer to address this issue in letters dated November 21, 2008, December 4, 2008, and December 11, 2008. (Attached hereto as Ex. L are true and correct copies of the letters.). In these letters FLC specifically requested that Meyer provide it with proposed

dates for the three days of meetings pursuant to Article 15.1 of the License Agreement. Meyer failed to respond to this request and instead expanded its infringing use of the FARBERWARE mark despite FLC's warnings that to do so would be trademark infringement and a material breach of the License Agreement.

13. Similarly as set forth in ¶ 344 of the Complaint, FLC informed Meyer on December 12, 2008 and January 15, 2009 that it was instituting the dispute resolution process of the License Agreement with regard to Meyer's willful failure to provide samples of its pink cookware set and its accompanying Packaging and/or Promotional Materials and FLC requested potential dates from Meyer for the three days of meetings required by Article 15.1. (Attached hereto as Ex. M are true and correct copies of the letters.). Once again, Meyer simply ignored FLC's requests.

14. As set forth in detail in my Declaration submitted in support of FLC's motion to dismiss and transfer MUS's California action, and the correspondence between the parties attached thereto, when FLC attempted to resolve the issue of which party was entitled to make the subject tea kettles pursuant to the dispute resolution provisions of the License Agreement, MUS and its counsel engaged in a concerted effort to frustrate and delay the dispute resolution process, culminating in MUS filing suit in California against Alfay and Evco. (*See*, Ex. G.). Although on July 10, 2008, Dean Krause, General Counsel of MUS, represented that Meyer was opting for mediation of this issue, thereby acknowledging that Meyer was aware of the issue to be mediated and that it had enough information to conduct such a mediation, Mr. Krause refused to respond to any of my telephone calls to him to select a mediator or to call me in response to my various letters to discuss the selection of mediators as required by Article 15.2 of the License Agreement. When the parties finally appointed mediators pursuant to Article 15.2, who were then in turn were to select a third mediator, Meyer's mediator engaged in the same bad faith delay tactics as Meyer's counsel.

(Attached hereto as Ex. N is a true and correct copy of the Declaration of James E. Daniels, FLC's mediator.)

15. The documentary evidence attached hereto clearly illustrates that Meyer had no intention of moving forward with the dispute resolution process set forth in Article XV of the License Agreement with regard to the tea kettles, and that it completely ignored FLC's repeated attempts to address the Prestige® and Pink Cookware disputes with Meyer through the dispute resolution process. Meyer's claim that it thought that the Prestige® infringement issue and the Pink Cookware issue were to be addressed in the context of the tea kettle dispute has no factual support either. Meyer never expressed this position in any correspondence to FLC. Furthermore, the meetings the parties held pursuant to Article 15.1 of the License Agreement with regard to the tea kettles occurred before the Prestige issue or the Pink Cookware issues even arose. As such, Meyer cannot claim that it thought the June and July 2008 meeting between the parties pursuant to Article 15.1 addressed these issues or complied with the terms of the License Agreement with regard to these new issues.

16. It was not until after Meyer was served with the New York action that it sought to amend MUS's complaint in the California action against FLC. In a dual effort to manufacture a basis for jurisdiction over FLC and create a basis for the transfer of the New York action to California, Meyer has fabricated a fraud claim against FLC. (*See*, Ex. C, ¶¶ 40-48.). As set forth in the FLC's Memorandum of Law filed in California in support of its motion to dismiss and transfer, MUS's fraud claim must fail, as it has no basis in fact, is insufficiently pled and is prohibited pursuant to California's litigation privilege. (*See*, Ex. F.). In fact, the same "misrepresentations" serve as the basis for the FLC trademark infringement claims addressed by FLC's preliminary injunction request.

17. Furthermore, in footnote 5 to its memorandum of law in support of their motion to dismiss, MUS and MIP make the blatant misrepresentation that they somehow

sought FLC's counsel's permission to sue Alfay and Evco on March 24, 2009. This is not true. First, MUS filed suit against Alfay and Evco on February 3, 2009, close to two months before MUS allegedly asked for "permission" to do so. Secondly, neither MIP or MUS ever asked for such permission or consent from FLC or its counsel. In fact in its March 25, 2009 response[2] to my letter of March 20, 2009, Meyer specifically stated that its position was that it did not need FLC's permission or consent to bring the lawsuit against Alfay and Evco. (Attached hereto as Exs. O and P, respectively, are true and correct copies of the March 20, 2009, and March 25, 2009 letters.). This is just one of a large number of such factual misrepresentations contained throughout Meyer's motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 27, 2009

_____
Christopher J. Sovak

---

[2] There was no March 24, 2009 correspondence to our firm from Meyer's counsel