UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| ----------------------------------------------- x | No. 09 CV 2570 (HB) (MHD) |
| FARBERWARE LICENSING COMPANY, LLC, : | |
| Plaintiff, : | |
| - *against* - : | |
| MEYER MARKETING CO., LTD., MEYER : | |
| INTELLECTUAL PROPERTIES, LTD., and : | |
| MEYER CORPORATION, U.S., : | |
| Defendants. : | |
| ----------------------------------------------- x | |

## DECLARATION OF DEAN L. KRAUSE

I, Dean L. Krause, hereby declare to the best of my knowledge, understanding and belief, as follows:

1.      Since June 1, 2003, I have been the Vice President and General Counsel of Meyer Corporation, U.S. ("MUS"). Also, since June 1, 2003, I have represented Meyer Intellectual Properties, Limited. ("MIP") and its affiliates pursuant to an agreement separate and apart from my employment with MUS. In addition, from 1997 to June 1, 2003, I served as outside counsel to MUS and its affiliates.

2.      I submit this declaration in support of Defendants' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction. Based on the capacities mentioned above, I am fully familiar with the facts and circumstances stated herein except where otherwise stated.

3.      I am personally familiar with the terms, conditions and the parties to the 1996 Agreement ("Agreement") entered into between Farberware, Inc. and Meyer Marketing Co., Ltd. ("MMC") dated June 27, 1996. Exhibit 1 is a true and correct copy of that Agreement.[1]

---

[1] The Exhibits referenced herein are attached to the Declaration of Heather Kramer.

4.      The Agreement was executed by Robert A Rae, as President of MMC.  MMC is no longer an active business entity.

5.      Meyer Intellectual Properties Limited ("MIP") is a corporation organized under the laws of British Virgin Islands, and has its principal place of business in Kowloon, Hong Kong, China.  MIP is the current holder of the rights and licenses purchased by MMC in the Agreement.  Farberware, Inc. acknowledged and consented to the sale of these rights from MMC to MIP.

6.      Meyer Corporation, U.S. ("MUS") is a Delaware corporation with its headquarters and principal place of business in Vallejo, California.  MUS is an affiliate of MIP and is in the business of distributing and selling various branded products in the United States which it purchases from affiliated foreign companies.

7.      Pursuant to the Agreement, Farberware, Inc. sold MMC the exclusive right and license to use and exploit the Farberware brand name and related trademarks in connection with the sourcing, manufacturing, distribution and sale of specific Farberware-branded "Cookware and Bakeware Products," as defined in the Agreement.

8.      In exchange for these trademark rights and other assets, MMC paid Farberware, Inc. roughly $25 million at the time of consummating the Agreement.  In addition, Article XI of the Agreement also provided that Farberware would receive royalties totaling $1.00 per year only.  The first 100 years of the royalties have already been paid.  No further royalty payments are required until at the earliest 2096, and even those royalties will be $1.00 per year.

9.      Pursuant to the Agreement, MUS distributes and sells Farberware-branded cookware and bakeware products.

10.    The rights MIP and its affiliates obtained under the Agreement are exclusive and worldwide.  Farberware sales by MUS and its affiliates are more than $100 million per year, of which Farberware Licensing Company, LLC ("FLC") receives no percentage, save its $1.00 per year.  FLC derives no ongoing revenue from the manufacture and sale of any Farberware-branded cookware or bakeware, save its $1.00 per year.  FLC is not a customer of MUS, is not a supplier of MUS, and to my knowledge is not involved whatsoever in the supply chain of Farberware brand cookware.

11.    Since its acquisition of these intellectual property rights, MUS, not FLC, has invested substantial resources in the development of the Farberware brand and the establishment of goodwill for Farberware cookware and bakeware products throughout the United States through its ongoing business activities.    Between FLC and MUS and its affiliates, all development, research, and promotion of cookware and bakeware products is entirely in the hands of MUS and its affiliates.

12.    In contrast, I am not aware of FLC investing any money in the development of the Farberware cookware and bakeware products or the Farberware brand and goodwill associated with such cookware and bakeware products.  To my knowledge, FLC does not have an internal research and development department nor a marketing department to foster the goodwill associated with the Farberware mark. Even the costs of continuing registration of the FLC "Farberware" trademarks fall to MUS or its affiliates, not FLC.

13.    For purposes of organization, MUS houses all sales operations related to Farberware in its "Farberware Cookware Division," which is not a separate legal entity.  Within MUS, the Farberware Cookware Division is charged with the task of carrying out MUS's exclusive right to distribute and promote Farberware products.  In that regard, the Farberware products and

those products that are used to enhance the Farberware brand, such as Prestige bonus items, are manufactured for the Farberware Cookware Division of MUS.

14.    Under Article IV of the Agreement, FLC has no right to object to any Farberware products or promotional materials, so long as the products and materials are comparable in quality to those utilized and/or approved by Farberware prior to 1996 or the equivalent of other MUS-branded products. The products must also comply with applicable laws and regulations.

## Course of Dealing with FLC and Its Predecessor

15.    Article IV of the Agreement contains provisions whereby MUS was to provide Farberware with samples or notices of the products and the packaging and promotional materials either before or after release of the items.

16.    Based on corporate information, it is my understanding that after executing the Agreement and without any objection by any of the parties, there was little to no interaction between MUS and Farberware, Inc. or FLC, and the parties followed no process whatsoever with regard to Article IV of the Agreement for several years.

17.    In recent years, though, it is my understanding based on corporate information that FLC and MUS agreed to carry out this provision by meeting with, reviewing products and materials with, and securing approval from FLC representatives at the annual International Home and Housewares Show ("Show") in Chicago, Illinois.

18.    To my knowledge, FLC never objected to me or anyone else at MUS that this practice of meeting once a year at the Show to review new Farberware products, packaging, and promotional materials was insufficient. Similarly, from 2003 to mid-2008, FLC never objected to me, nor to my knowledge to anyone else at MUS, that it was not receiving samples or notices of Farberware products, packaging, or promotional materials.

**Farberware Cookware Sets**

19.     Several of the Farberware products that MUS distributes and sells to retailers are cookware sets. These cookware sets include several pots, pans and lids.

20.     In 2007, MUS began to add Prestige kitchen accessories to the Farberware cookware sets.

21.     Prestige is a registered trademark of MIP.  Prestige products include, but are not limited to, kitchen tools, cutlery and bakeware.  MUS and its affiliates distribute and sell Prestige products around the world, and Prestige is a well-recognized brand that has been around since the 1940s.

22.     When MUS began preparing the packaging for these Farberware cookware sets that included Prestige items, the initial design concepts for the packaging were brought to me for my review.  In reviewing these products, steps were taken to ensure that that MUS complied with Federal Trade Commission regulations and avoided any consumer confusion issues.   At all times, MUS attempted to create packaging and advertising that was not confusing.

23.     As a result, the final packaging design concept for the Farberware cookware sets with Prestige products, which I approved, takes great care to avoid any confusion between the Farberware and Prestige products by carefully distinguishing between them.  Although there are several variations of this packaging, Exhibits 2 and 3 are true and correct copies of two typical examples of the final packaging for the Farberware Affiniti and Farberware Millennium cookware sets, which included two Prestige kitchen tools.  This packaging has a photo of the Farberware pots and pans included in the set with the name "Farberware" above it.  In the corner of the photo of pots and pans, there is a box with bold borders containing a photo of the two Prestige kitchen tools with the language "Includes Prestige Kitchen Tools."  In addition, on the top flap of the packaging, there is a photo of each product included in the set.  Again, there is an

individual photo of the Prestige kitchen utensil that states: "Prestige Kitchen Tools Slotted Spoon, Slotted Turner." By noting the distinction between the Farberware and Prestige products in various places on the box, MUS attempted to avoid any confusion from combining Farberware and Prestige products in the same box.

24.    At or about that same time in 2007, I also reviewed and approved proposed packaging for the Triple Bonus Set, which is Exhibit 4. The primary photo on all panels of the Triple Bonus Set is a 10-piece cookware set, above which it states in bold and all capital letters "Farberware." Above this large photo of the pots and pans and across the top of the panel, there are three separate photos of the nine Prestige bonus items, which are each bordered with bold lines. One box includes a photo of the two cookie sheets. The next box includes a photo of the six-piece tool set. The final box includes a photo of the 7" Santoku knife. At or near the top of these individual boxes, it states "Includes Prestige Kitchen Utensils." Based on the express identification of the cookware set as Farberware and the bonus items as Prestige, MUS attempted to avoid any confusion from combining Farberware and Prestige products in the same box.

25.    Also, to further clarify the separate affiliation of the Farberware and Prestige products, all packaging for Farberware cookware sets that include Prestige products described above, has the following trademark legend:

> Farberware is a registered trademark of Farberware Licensing Company LLC
>
> Manufactured and sold pursuant to a license from Farberware Licensing Company LLC
>
> Manufactured for Farberware Cookware Division, Vallejo, CA 94590
>
> Prestige is a Registered trademark of Meyer Intellectual Properties Limited

26.    MUS never intended to use the Farberware name to promote Prestige products, such as cutlery or kitchen tools, because at all times, MUS took steps to specifically identify the Farberware products as Farberware and the Prestige products as Prestige on its packaging and in its promotional materials.

27.    It is my understanding that MUS does not now and at no time relevant has it exercised any control, direction or approval of the advertising materials or website content for Target or Kohl's regarding Prestige and Farberware-branded products.

28.    Based on my review of corporate records and www.potsandpans.com, the regular retail price for Farberware cookware sets with Prestige products is usually between $90-$150.

29.    The FOB sale price (the price at which MUS' affiliates sell the products) of Prestige products, such as cutlery, kitchen tools and baking sheets, is usually below $5.00.

### Dispute with FLC

30.    Even though MUS had complied with Article IV of the Agreement by meeting and discussing the Farberware products and promotional materials at the Show for years, FLC for the first time in mid-2008 began to request a list of all products and packaging and/or promotional materials.

31.    In response to FLC's request, I forwarded to FLC on October 2, 2008, several sell sheets that were to be part of upcoming promotions in 2009.

32.    All of the products identified in the sell sheets were current products MUS distributed.

33.    Again, like the packaging for the Triple Bonus Set, which was described above, the sell sheet specifically identified the cookware set as Farberware and the kitchen tools, knife, and cookie sheets as Prestige. Exhibit 5 is a true and correct copy of the sell sheet. In addition,

the language at the bottom of the sell sheet specifically states that the bonus items are "Prestige." In no way was MUS trying to use the Farberware name to promote Prestige products.

34.    The Double Bonus Event provided every customer who purchased a Farberware Affiniti or Millennium cookware set with a free 5-piece Prestige Cutlery Set. Exhibit 7 are true and accurate copies of the sell sheets. The sell sheets specifically label the cutlery as a "5 Piece Prestige Cutlery Set." It does not label them as "Farberware" or "Farberware Affiniti" or "Farberware Millennium." In no way was MUS intending to use the Farberware brand to promote the Prestige cutlery set.

35.    FLC notified MUS of objections it had to the Triple Bonus Set and Double Bonus Event sell sheets attached to my October 2, 2008 letter.

36.    In response, MUS, through its counsel, notified FLC on November 6, 2008 that it disagreed with FLC's objections for a variety of reasons, including that there was nothing confusing about the sell sheets, MUS was not using the Farberware brand to promote Prestige cutlery or kitchen tools, MUS was authorized to distribute and sell Farberware cookware and bakeware products, FLC had approved these Farberware cookware sets with Prestige products in the past, and the packaging and promotional materials satisfied the standards of Article IV of the Agreement.

37.    Based on these justifications and the measures MUS took to ensure that the packaging and promotional materials were not confusing, MUS had a good faith basis to continue to distribute and sell Farberware cookware sets that included Prestige products.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  April 27, 2009

_____
Dean L. Krause

CHICAGO\2669024.1
ID\HLK

- 8 -