UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
FARBERWARE LICENSING COMPANY, LLC,

                                    Plaintiff,

    - *against* -

MEYER MARKETING CO., LTD., MEYER
INTELLECTUAL PROPERTIES, LTD., and
MEYER CORPORATION, U.S.,

                                   Defendants.
------------------------------------------------------------ x

No. 09 CV 2570 (HB) (MHD)

## DECLARATION OF DAVID TAVACOL

I, David Tavacol, hereby declare to the best of my knowledge, understanding and belief, as follows:

1. I am the Director of Creative Services & Retail Marketing for Meyer Corporation, U.S. ("MUS"). I have held that position since November 2008. Between January 2005 when I joined the company and November 2008, I also held the positions of Retail Marketing Manager, Senior Retail Marketing Manager, and Director of Retail Marketing.

2. I submit this Declaration in support of Defendants' Memorandum in Opposition to the Motion for Preliminary Injunction. I am fully familiar with the facts and circumstances stated herein except where otherwise stated.

3. Based on the capacities mentioned above, I am personally familiar with the development and production of the packaging, marketing and advertising materials for the various products that MUS distributes, including Farberware, Inc. ("Farberware") products. In this role, I am also familiar with how MUS conducts business with third-party retailers.

## Farberware Cookware Sets

4. One of MUS' products is the Farberware cookware sets that are sold under various types (e.g., non-stick, stainless steel) and colors. Cookware sets come in a variety of different combinations, but in general they include a mixture of pots, pans and lids. MUS has been distributing Farberware cookware sets well before 2005.

5. As an additional incentive to buy Farberware cookware sets and to gain an advantage over competitors, MUS began to add Prestige kitchen accessories to the cookware sets, such as slotted spoons and slotted turners, in 2007.

6. Such a marketing tactic was fairly common in the housewares industry because manufacturers, distributors and retailers believed this was a way to distinguish their products from their competitors and to attract customers.

7. Kirk Loveland, Director of New Products and Packaging for the Farberware brand at MUS, and I prepared the initial packaging for the cookware sets that included both Farberware and Prestige products. We, along with MUS' in-house counsel, Dean Krause, took steps to ensure that the packaging was not confusing and complied with all laws.

8. The final packaging design concept for the Farberware cookware sets with Prestige products takes great care to avoid any confusion between the Farberware and Prestige products by carefully distinguishing between them. Exhibits 2 and 3 are true and correct copies of two examples of the final packaging for the Farberware Affiniti and Farberware Millennium cookware sets, which included two Prestige kitchen tools.[1] This packaging has a photo of the Farberware pots and pans included in the set with the name "Farberware" above it. In the bottom corner of the photo of pots and pans, there is another box with bold borders containing two

---

[1] The exhibits cited herein are attached to the Declaration of Heather Kramer.

Prestige kitchen tools with the following language inside the box "Includes Prestige Kitchen Tools." In addition, on the top flap of the packaging, there is a photo of each product included in the set. Next to the Prestige product photo, it states: "Prestige Kitchen Tools Slotted Spoon, Slotted Turner." As is demonstrated, MUS carefully designed the packaging to distinguish between Farberware products and Prestige products.

9. At or about this same time in 2007, Mr. Loveland and I prepared packaging design concepts for a Triple Bonus Set promotion that included a Farberware cookware set, as well as one or more of the following Prestige bonus items, including: a 7" Santoku knife, a six-piece kitchen tool set, and two cookie sheets. Again, to ensure that the packaging was not confusing and complied with all laws, we provided the design concepts for the Triple Bonus Set to Mr. Krause, who approved them.

10. Again, the packaging for the Triple Bonus Set carefully distinguishes between the Farberware and Prestige products. Exhibit 4 is a true and correct copy of one example of the final packaging for the Triple Bonus Set. The primary photo on all panels is a 10-piece cookware set, above which it states in bold and all capital letters "FARBERWARE." Above this, there are three separate photos of the nine Prestige bonus items, which are each bordered with bold lines. One box includes a photo of the two cookie sheets. The next box includes a photo of the six-piece tool set. The final box includes a photo of the 7" Santoku knife. At or near the top of these individual boxes, it states "Includes Prestige Kitchen Utensils."

11. The Triple Bonus Set promotion began in the Fall of 2007. It is my understanding that MUS will only offer that Triple Bonus Set through June 30, 2009.

12. Also, to further clarify the separate affiliation of the Farberware and Prestige products, all packaging for Farberware cookware sets that include Prestige products described above, has the following trademark legend:

> Farberware is a registered trademark of Farberware Licensing Company LLC
>
> Manufactured and sold pursuant to a license from Farberware Licensing Company LLC
>
> Manufactured for Farberware Cookware Division, Vallejo, CA 94590
>
> Prestige is a Registered trademark of Meyer Intellectual Properties Limited

13. In total, MUS produces and sells approximately 26 variations of the Farberware cookware sets that include Prestige products, of which 23 are active.

## Lack of Knowledge of Retailers' Advertisements and Websites

14. MUS is a wholesaler and does not operate any physical retail stores. As a result, MUS sells the Farberware products to retail stores, such as Kohl's and Target, who in turn, market the products to the consuming public.

15. During the sales process with retailers, MUS may provide the retailers with sell sheets that describe a new Farberware product or promotional event associated with one of the Farberware products, such as a rebate or a bonus item. Sell sheets are never provided to the ultimate consumer.

16. As is the practice in the industry, MUS routinely has little involvement with and no control over, how retailers advertise MUS' Farberware products in their advertisements or on their websites.

17. With regard to both their internet and print advertisements, most retailers shoot their own ads, create their own layouts and write their own copy. Copy is the written content in publications or advertisements.

18. No retailer gives MUS final approval rights on Farbeware products with respect to the third-party retailer's print and website advertisements.

19. I have reviewed Exhibit O of Plaintiff's Exhibit Book concerning the Target advertisement for the "Farberware 10pc Black Nonstick Cookware Set with 9 Bonus Items," which is also known as the "Triple Bonus Set" described above.[2]

20. It is my understanding that MUS did not provide Target with photos or copy for this particular advertisement. MUS never approved the Target website advertisement attached as Exhibit O to Plaintiff's Exhibit Book. Also, to my knowledge MUS never had an opportunity to comment on or object to Plaintiff's Exhibit O prior to its publication.

21. It is my understanding that no one at MUS did anything more than at most provide Target with a package of the Triple Bonus Set, similar to what was described in Paragraph 10 and Exhibit 4, and may have also provided it with a sell sheet similar to Exhibit 5.

22. The sell sheet for the Triple Bonus Set, Exhibit 5, includes artwork and descriptions of the contents of the Triple Bonus Set. Like the packaging for the Triple Bonus Set described in Paragraph 10, there is a photo of the Farberware 10-piece set (pots, pans and lids). Above that photo in three separate boxes are photos of the Prestige bonus items. The bonus items are described as "Prestige Kitchen Utensils." Moreover, the sell sheet also explicitly states at the bottom of the page that the promotion includes saucepans and skillets, "***Plus Prestige*** 6 pc tool set, 7" santoku and 2-9" x 13" cookie sheets" (emphasis added).

---

[2] "Plaintiff's Exhibit Book" refers to the exhibits attached to the Declaration of Jan Ratushny..

23. Based on MUS' lack of involvement in Target's advertising and website design and MUS' proper description of the Prestige and Farberware products on the Triple Bonus Set packaging, MUS never knew or had any reason to know that Target was advertising the Triple Bonus Set without ever mentioning that the bonus items were Prestige products. The statements made in Target's website were not made by MUS.

24. Further, I have reviewed Exhibit G of Plaintiff's Exhibit Book concerning Kohl's December 2008 advertising circulars in which there are advertisements for a Farberware Millennium 12-piece cookware sets that include Prestige utensils and a bonus set of Prestige knives.

25. MUS did not provide Kohl's with the photos or copy that appear in these particular advertisements, Plaintiff's Exhibit G. MUS never approved the Kohl's advertisements attached as Exhibit G to Plaintiff's Exhibit Book. Also, to my knowledge MUS never had an opportunity to comment on or object to it prior to publication.

26. With respect to Plaintiff's Exhibit G, the December 2008 Kohl's advertising circular, MUS at most may have provided Kohl's with the packaging of the Farberware Millennium 12-piece cookware set, which is Exhibit 3 and was previously described above in Paragraph 8, and may have also provided it with a Fall Double Bonus Event sell sheet similar to Exhibit 6.

27. As stated above, the packaging for the Farberware Millennium 12-piece cookware set clearly segregates and labels the kitchen utensils as Prestige products. Exhibit 3.

28. The Spring Double Bonus Event sell sheet, Exhibit 6, provides that with any purchase of a Farberware Millennium cookware set, the purchaser will received a $30 instant

savings and a free "5 Piece Prestige Cutlery Set." The cutlery set is expressly described as a Prestige product, not a Farberware product.

29. Based on MUS' lack of involvement in Kohl's advertising and website design and MUS' proper description of the Prestige and Farberware products on the Farberware Millennium packaging and the Double Bonus Event Sell Sheet, MUS never knew or had any reason to know that Kohl's may have been mischaracterizing the Prestige utensils as Farberware products in the December 2008 advertising circular, Plaintiff's Exhibit G. The statements made in Kohl's advertisement were not made by MUS.

30. Moreover, it does not appear that Kohl's mischaracterized the 5-piece Prestige Cutlery Set in the advertisement marked as Plaintiff's Exhibit G, because the knives are placed away from the Farberware cookware set and the product description definitively states that the knives are Prestige products.

31. Further, I have reviewed Exhibit N of Plaintiff's Exhibit Book concerning Kohl's February 2009 advertising circular in which there is an advertisement for a Farberware Enhanced 13-piece cookware set that includes a bonus set of Prestige knives.

32. To my knowledge, MUS did not provide Kohl's with the photos or copy that appear in this February 2009 advertisement, Plaintiff's Exhibit N. MUS never approved the Kohl's advertisements attached as Plaintiff's Exhibit N, and never had an opportunity to comment on or object to it prior to publication.

33. With respect to Plaintiff's Exhibit N, the February 2009 Kohl's advertising circular, MUS did nothing more than provide Kohl's with the packaging of the Farberware Enhanced 13-piece cookware set, which is Exhibit 8. This packaging includes a photo of seven pots and pans, four lids, and three kitchen tools, which are all Farberware products. The kitchen

tools included in the Farberware Enhanced cookware set are not Prestige products. Rather, they are Farberware products, which were purchased by MUS from the Farberware tools licensee, Lifetime Brands.

34. Based on MUS' lack of involvement in Kohl's advertising and website design, and there are no Prestige products even included in the Farberware Enhanced cookware set, MUS never knew or had any reason to know that Kohl's may have mischaracterized the Farberware and Prestige products in the February 2009 advertising circular, Plaintiff's Exhibit N. Moreover, it does not appear that Kohl's mischaracterized the 5-Piece Prestige Cutlery Set in the advertisement, because the Prestige knives are set apart from the cookware and the product description definitively states that the knives are Prestige products.

### FLC's Approval of Materials Combining Farberware and Prestige Products.

35. Also, in my various capacities at MUS, I was involved in obtaining the approval of Farberware Licensing Company, LLC ("FLC") for MUS' Farberware products, packaging and promotional materials.

36. Since joining the company in 2005, the practice between FLC and MUS had been for the parties to meet at the annual International Home and Housewares Show ("Show") in Chicago to discuss MUS' new Farberware initiatives. Prior to each show, I would contact Jan Ratushny, President of FLC, to set up a time to meet at MUS' booth to review and approve the products. Most existing Farbeware products, all new products, and all promotional materials were made available for review by Mr. Ratushny. He never had any questions about the promotional materials but we did discuss new products.

37. At the 2008 Show held on March 16-18, 2008 in Chicago, Jan Ratushny and I again scheduled a time to meet and review the Farberware products and promotional materials at the MUS booth. During our meeting, we reviewed the various Farberware products, which

- 8 -

included several Farberware cookware sets, which were paired with one or more Prestige kitchen accessories, such as a kitchen tool set, knives, and baking sheets. The Prestige products include the name "Prestige" on them. In addition, for FLC's review, MUS had its sell sheets posted on the walls, which included information regarding the Farberware cookware sets promotions that included Prestige bonus items.

38. In preparation for our meeting, I prepared and presented MUS' then current range of Farbeware products and accompanying sell sheets for Mr. Ratushny's review. Without limitation, that included the sets which combine Farbeware cookware with Prestige products. After reviewing our booth and discussing various issues with me, Mr. Ratushny had no questions about, or objections to, MUS' sets which combine Farbeware cookware with Prestige products.

39. Only on two occasions did Mr. Ratushny ever withhold his approval of any of the Farberware products. On one occasion, one of the Farberware products had a loose handle. After the show, a new sample was provided to FLC, which it then approved. Also, at the 2008 Show, Mr. Ratushny objected to MUS' Farberware teakettles.

40. Throughout 2005, 2006, 2007, and half of 2008, FLC never objected to me about this practice of meeting once a year at the Show, at which MUS made available for Mr. Ratushny's review Farberware products, packaging, and promotional materials. Similarly, during this time FLC never objected to me that it did not receive samples or notices of Farberware products, packaging, or promotional materials.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 27, 2009

David Tavacol

CHICAGO\2669207.2
ID\HLK