UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
FARBERWARE LICENSING COMPANY, LLC,

                           Plaintiff,

- *against* -

MEYER MARKETING CO., LTD., MEYER
INTELLECTUAL PROPERTIES, LTD., and
MEYER CORPORATION, U.S.,

                           Defendants.
------------------------------------------------------------------x

No. 09 CV 2570 (HB) (MHD)

## DECLARATION OF JAY ZILINSKAS

I, Jay Zilinskas, hereby declare to the best of my knowledge, understanding and belief, as follows:

1. I am the Managing Director of Meyer Corporation, U.S. ("MUS"). In that capacity, I am involved in overseeing all aspects of MUS' sale of Farberware products.

2. I submit this declaration in support of Defendants' Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction. I am fully familiar with the facts and circumstances stated herein except where otherwise stated.

### Farberware Cookware Sets

3. MUS is in the business of selling Farberware products. On an annual basis, MUS and its affiliates generate more than $100 million in Farberware sales.

4. One of the Farberware products that MUS distributed and sold to retailers since 1997 was cookware sets in a variety of types (stainless steel, non-stick, etc.) and color. These cookware sets included several pots, pans and lids.

5. In 2007, MUS began to add Prestige kitchen accessories to the Farberware cookware sets. Currently, MUS sells 26 variations (of which 23 are active) of the Farberware

cookware sets with Prestige products. These products account for approximately twenty percent (20%) of MUS' Farberware sales.

### Consequence of the Entry of Proposed Preliminary Injunction

6. I am familiar with the Court's March 26, 2009 Order to Show Cause, which asks why an order should not be entered enjoining MUS from (a) using Farberware's name, trademark, logo, brand name, etc. in connection with the sale, advertisement, promotion etc. of Prestige-branded products; (b) representing that Prestige products are made or sponsored by Farberware; and (c) doing any acts likely to cause confusion in the mind of the public vis-à-vis Prestige products and Farberware products, or otherwise "unfairly competing with Farberware…or misappropriating that which rightfully belongs to FLC."

7. The entry of such an order would have a catastrophic effect on the affairs of MUS.

8. First, it appears that compliance with such an order would require MUS to recall from retailers all lines of Farberware cookware sets that include Prestige products. As these products represent a significant portion of MUS' Farberware business, such a task would entail the collection of hundreds of thousands of products from thousands of retailer locations across the United States. MUS would also have to re-design all packaging and promotional materials for the Farberware cookware sets that include Prestige products. Then, MUS would have to re-package all these products and try to return them to the retailers. MUS may, in fact, not be able to replace the lost business at all.

9. Such a recall would reduce MUS' revenues to disastrous levels. Not only would there be exorbitant logistical costs to comply with any such order, but MUS' would also lose valuable shelf space and sales. In addition, MUS would be liable for the lost revenue/profits of

the retailers. Beyond lost profits and revenues, retailers may choose not to buy any Farberware in the future. As such, recalling these items puts the entire brand at risk.

10. Due to the breadth of the costs, the actual losses that MUS would suffer as a result of a recall are too large and unpredictable to quantify precisely, but if required to estimate, the monetary losses could easily be twenty million dollars.

11. Second, even if this Court enjoins MUS' future sales of Prestige products or Farberware cookware sets with Prestige products, this will still be an extreme hardship for MUS to bear. Such an order would require MUS to redesign and repackage its current inventory valued at $20-30 million dollars. More importantly, MUS would be barred from selling all of its 26 varieties (of which 23 are active) of Farberware/Prestige cookware sets and various Prestige products. This could amount to a loss of revenue totaling millions of dollar due to (1) the lost sales that will occur during the six to eight month time frame it will take to re-design and re-package the cookware sets; and (2) retailers will no longer be interested in purchasing cookware sets that do not have additional kitchen accessories.

12. Under either scenario, such revenue losses would likely have far-reaching consequences, such as lay-offs certainly at MUS and possibly at the affiliated factory which makes Farberware cookware.

13. Regardless of what type of injunction this Court enters, the goodwill that MUS has established over the last 13 years for the Farberware mark will be irreparably harmed if it is required to withdraw or stop selling Farberware cookware sets with Prestige products. By either withdrawing the products from the market or no longer offering for sale Farberware cookware sets with Prestige products upon which both retailers and consumers have come to depend, the

Farberware mark and brand will lose the goodwill and good reputation that MUS and its affiliates have spent substantial resources to build.

14. In that same vein, MUS' relationship with its retailers may be forever damaged. Retailers will naturally be upset with MUS for having to return inventory, which it will be unable to sell during the time it is being re-packaged, or for no longer offering a well-established product. As a result, several disputes could result between MUS and its retailers, which will further negatively impact the Farberware brand, as well as MUS' revenues.

15. Therefore, an order requiring either the recall or the stoppage of sales of all Farberware cookware sets with Prestige products and all Prestige products would result in MUS losing tens of millions of dollars, valued relationships with retailers, and the goodwill associated with the Farberware mark.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: April 27, 2009

_____
Jay Zilinskas

CHICAGO\2668846.2
ID\HLK