# EXHIBIT A (Part 1)

## LICENSE AGREEMENT

LICENSE AGREEMENT, dated as of *June 27*, 1996 (the "Effective Date"), by and between FARBERWARE INC. (formerly known as Far-B Acquisition Corp.), a Delaware corporation (the "Licensor") and an indirect wholly-owned subsidiary of Syratech Corporation, a Delaware corporation (the "Parent"), and MEYER MARKETING CO. LTD., a British Virgin Islands corporation (the "Licensee").

WHEREAS, Licensor has acquired and owns certain trademarks, patents and copyrights relating to Cookware and Bakeware Products as defined herein, as well as to other products; and

WHEREAS, the Licensor wishes to grant, and the Licensee wishes to receive, a license under certain trademarks, patents and copyrights relating to Cookware and Bakeware Products, all upon the terms and subject to the conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants and agreements herein contained, and of other good and valuable consideration, each to the other in hand paid, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I

### Definitions, Interpretation and Construction

The capitalized terms used in this License Agreement are defined, and the rules governing the interpretation and construction of this License Agreement are set forth, in Schedule I annexed hereto; and the text and provisions of said Schedule I are incorporated herein by reference as though set forth at length in this Article I.

## ARTICLE II

### Grant of Licenses

2.1    Licensor hereby grants to Licensee for the period from the Effective Date until Termination in accordance with Article XIII below:

2.1.1   The exclusive right and license to use and exploit throughout the World (except as hereinafter provided) the Farberware name and related trademarks in connection with the sourcing, manufacture and/or distribution of (i) Cookware and Bakeware Products for home (as distinguished from commercial, industrial and/or institutional) use and (ii) commercial, industrial and institutional size pots, pans (including baking pans) and roasters for commercial, industrial or institutional use; provided, however, that the word "devices" as used in the definition of "Cookware and Bakeware Products" shall not be deemed to confer upon Licensee any right to use and exploit the Farberware name and related trademarks in connection with the sourcing, manufacture and/or distribution of devices that are the same or similar to and intended for the same use as devices that are both (a) included in LHC's Current Farberware Catalogue, and (b) not included among devices that as

of the date hereof are sourced, manufactured and/or distributed by the Licensor and its predecessors and their licensees (other than LRC) pursuant to Existing Farberware Licenses; and provided, further, that the rights conferred by this Section 2.1.1 shall not include rights to use and exploit the Farberware name and related trademarks in connection with the sourcing, manufacture and/or distribution of Electric Products of any kind, it being understood and agreed that Licensor is reserving to itself the right to use and exploit (directly or by assignment, licensing or otherwise) all Electric Products Rights, including rights to manufacture, source, market and otherwise exploit electrified versions of the frying pans, griddles and woks referred to in the final sentence of the definition of Cookware and Bakeware Products.

2.1.2   The exclusive right and license to use and exploit those specific Intellectual Property Rights that were acquired by Licensor pursuant to the Asset Purchase Agreement and that are listed on Schedule II annexed hereto, such specific Intellectual Property Rights, together with such registrations thereof as may hereafter be effected in additional countries in accordance with Section 5.2 solely for Cookware and Bakeware Products, being herein collectively called "Schedule II Rights."

2.1.3   The non-exclusive right to use and exploit so much of the other Intellectual Property Rights acquired by the Licensor pursuant to the Asset Purchase Agreement (including, without limitation, such of the Intellectual Property Rights listed on Schedule III annexed hereto as were so acquired by Licensor but are not listed on Schedule II) as (i) have heretofore been used or exploited by the Licensor or its predecessors in connection with the sourcing, manufacture and

4

distribution of Cookware and Bakeware Products and which Licensor shall have identified as such, and (ii) may be used and exploited without violating the rights of third parties, including, without limitation, the rights of parties to the Existing Farberware Licenses and the Lifetime License, such non-exclusive Intellectual Property Rights, together with such registrations thereof as may hereafter be effected in additional countries in accordance with Section 5.2 not solely for Cookware and Bakeware Products, being herein collectively called "Schedule III Rights."

      2.2    Licensor reserves unto itself all other rights in and to the Intellectual Property. Without limiting the generality of the next preceding sentence and notwithstanding the grant of rights made to Licensee pursuant to Section 2.1, Licensor and Parent shall have the right at any time and from time to time to sell any and all Inventory owned by Licensor or Parent at the time of the Closing under the Agreement or that Licensor is thereafter required to purchase under the MSA (including Inventory required to be purchased pursuant to Licensor's exercise prior to the date of the Agreement of Licensor's option under Section 2.A of the MSA to extend the initial Production Period), and all returns thereof. Notwithstanding the grants of trademark and other intellectual property rights being made to Licensee pursuant to Section 2.1, (i) Parent and Licensor shall each have the right and license (so long as either of them owns any Inventory acquired from the Company or returned by customers) to use and exploit (and to authorize their customers to use and exploit in connection with resale of the Inventory) all of the Intellectual Property Rights that have at any time been used or exploited by the Licensor or the Company or others in the marketing of Inventory and (ii) the Company has a continuing royalty

free license to use the name Farberware in connection with (and only in connection with) the sale in Australia of finished goods Inventory located in Australia on the Purchase Date.

## ARTICLE III

### Ownership and Use of Intellectual Property Rights

3.1     Licensee acknowledges Licensor's exclusive ownership of the Intellectual Property Rights, including any and all trademarks, service marks, copyrights and patents listed on Schedule III, and agrees that it will do nothing inconsistent with such ownership.

3.2     Licensee acknowledges and agrees that all of the Intellectual Property Rights and the goodwill pertaining to the Intellectual Property Rights is vested in Licensor.  Licensor agrees to record this License Agreement and/or to register Licensee as a user of the Intellectual Property Rights licensed hereby with appropriate government authorities and to execute all further lawful documents necessary to effect the terms of this License Agreement in various countries in a manner that will preserve the ownership rights of Licensor therein; and Licensee agrees to assist Licensor in so doing.  If, after being requested to do so by Licensee, Licensor shall for any reason fail to record this License Agreement, or, alternatively, to register Licensee as a user of the Intellectual Property Rights licensed hereby with appropriate government authorities, or otherwise fail to make other necessary filings hereunder, Licensee shall have the right, on notice to Licensor, to do so; and in such event Licensor shall cooperate with Licensee in the exercise of such right.

3.3    Licensee agrees to follow the instructions of Licensor for proper use of the Intellectual Property Rights licensed hereby in order that protection and/or registrations therefor may be obtained or maintained.  Licensee agrees that, except as specifically provided in Article II, nothing in this License Agreement shall give Licensee any right, title or interest in or to any of the Intellectual Property Rights licensed hereby including (i) the vesting of ownership of the Intellectual Property Rights in Licensee, (ii) the vesting of secondary meaning rights to the Intellectual Property in Licensee, or (iii) the loss by Licensor of any of its rights in and to the Intellectual Property reserved to Licensor herein (including rights of reverter which are hereby so reserved) other than the right and license to exercise Intellectual Property Rights in accordance with, and subject to the terms and conditions of, this License Agreement.  Licensee further agrees that it will not attack the title of Licensor to any of the Intellectual Property Rights, or attack the validity of the Intellectual Property Rights, or attack the validity of this License Agreement.

## ARTICLE IV

### Quality Standards and Control

4.1    Licensor acknowledges that adherence to high standards of quality, safety, style and appearance in the manufacture and distribution of Cookware and Bakeware Products is imperative to preservation of the integrity and value of the Farberware name, related trademarks and associated good will; and Licensee undertakes and agrees that all Cookware and Bakeware Products manufactured and distributed by Licensee using the Farberware name and related trademarks shall (i)

comply with applicable laws and regulations and (ii) conform to standards of quality, safety, style and appearance at least equal to those standards that have heretofore applied to first quality Cookware and Bakeware Products manufactured and distributed by the Company, which the parties agree are acceptable standards. The Licensee further agrees that Licensor shall have the right to assure itself that the Licensee is complying with the standards set forth in this Section 4.1 either by means of the procedure set forth in Section 4.2 ("Prior Approval") or by means of the procedure set forth in Section 4.3 ("Post Production Review"), the choice of procedure to be chosen by the Licensee in the Licensee's sole and absolute discretion.

4.2    If Licensee chooses to seek Prior Approval of a Cookware or Bakeware Product, Licensee will initially forward to Licensor a prototype sample ("Initial Sample") thereof. Upon receipt of Licensor's approval of the Initial Sample, Licensee will produce a production sample. Licensee agrees to test such Cookware and Bakeware Product before production of said product in Licensee's own laboratory and to submit written results of such test along with a sample ("Approval Sample") of the Cookware and Bakeware Product so tested to Licensor. Licensor may, for any reason, submit any such Approval Sample to an independent laboratory for testing. All costs, fees and expenses associated with the testing by the independent laboratory will be borne by the Licensee. Licensor agrees to inspect expeditiously each such Approval Sample and to notify Licensee of its approval within fifteen (15) days of receipt, and if not approved, to advise Licensee, in writing, of any and all corrections reasonably required in order for it to be approved. The quality of each Cookware or Bakeware Product offered for sale by Licensee shall be in conformity with the

Approval Sample thereof. If Licensor does not so respond within thirty (30) days, the Approval Sample shall be deemed approved by Licensor. The cost of all Approval Samples, including any and all shipping charges, shall be borne exclusively by Licensee. Licensor shall be entitled from time to time to inspect random samples (which Licensee agrees to make available at no charge to Licensor) from the production stock of Cookware and Bakeware Products that received Prior Approval to confirm that production stock of such products substantially conforms with the Approval Samples thereof. Production samples of any Cookware or Bakeware Products that conform to the Approval Samples thereof shall be deemed to meet the standards required by Section 4.1.

4.3     If Licensee elects not to pursue prior approval of any Cookware or Bakeware Product in accordance with Section 4.2 above, Licensee shall be deemed to have opted for Post Production Review of such product, and Licensee may proceed with the production and marketing of such Cookware or Bakeware Product so long as Licensee determines in good faith that such product conforms to the standards required by Section 4.1. Prior to or contemporaneously with Licensee's first commercial sale of any Cookware or Bakeware Product for which Licensee did not seek Prior Approval in accordance with Section 4.2, Licensee shall provide Licensor with written notice of Licensee's introduction of such Cookware or Bakeware Product. Licensee agrees to make available to Licensor at no charge such samples of each of the Cookware and Bakeware Products produced by Licensee as Licensor may from time to time reasonably request for the purpose of testing such products for compliance with applicable laws and regulations, and to enable Licensor to determine

9

whether such products comply with the standards specified in Section 4.1 above.  If Licensor thereafter determines in Licensor's reasonable discretion (which shall not be arbitrarily or capriciously exercised) that any Cookware or Bakeware Product not previously approved in writing (except as otherwise provided in the penultimate sentence of Section 4.2) does not comply with applicable laws and regulations or meet the quality standards required by Section 4.1, Licensor shall have the right (which shall be exercised reasonably and, if challenged by Licensee, shall be subject to the Dispute Resolution procedures set forth in Article XV) by written notice to Licensee to order that such product be withdrawn from the market immediately.  A failure promptly to comply with any such order that is not challenged or, if challenged, is upheld will be deemed to be a breach of this License Agreement.

4.4     Licensee agrees to permit Licensor upon reasonable request to inspect Licensee's manufacturing operations and testing records (and those of Licensee's suppliers) for the Cookware and Bakeware Products.

4.5     Any modification of any Cookware or Bakeware Product, including change of materials, design or size shall be treated as if it were a new product.

4.6     Licensee acknowledges that adherence to high standards of quality, style and appearance in the packaging and advertising (including any printed materials) of Cookware and Bakeware Products or in related uses of the Farberware name, logo or related trademarks in any form or manner whatsoever (collectively, "Packaging and/or Promotional Materials") is essential to preservation of the integrity and value of the Farberware name, related trademarks and associated good will; and

Licensee undertakes and agrees that all Packaging and/or Promotional Materials using the Farberware name, logo or related trademarks shall conform to standards of quality, style and appearance at least equal to those standards that (i) have heretofore applied in the packaging and marketing of first quality Cookware and Bakeware Products manufactured and distributed by the Company or, alternatively, (ii) have applied, or from time to time hereafter may be applied, to the packaging and marketing of high-grade Cookware and Bakeware Products manufactured and distributed by the Licensee under its own name or that of Meyer Corporation; and the parties agree that adherence to either of those standards shall be, and be deemed to be, adherence to an acceptable standard. The Licensee further agrees that Licensor shall have the right to assure itself that the Licensee is adhering to a standard permitted by this Section 4.6 either by means of the procedure set forth in subsection 4.6.1 ("Prior Approval"), or by means of the procedure set forth in subsection 4.6.2 ("Post-Utilization Review"), the choice of procedure to be made by Licensee in Licensee's sole and absolute discretion.

4.6.1  If Licensee chooses to seek Prior Approval of any Packaging and/or Promotional Materials, Licensee shall submit samples (hereinafter referred to as "Print Samples") of such Packaging and/or Promotional Materials to Licensor for approval prior to use thereof. Licensor agrees expeditiously to inspect such Print Samples and to notify Licensee of its approval within 15 days of receipt and, if not approved, to advise Licensee in writing of any and all changes reasonably required in order for them to be approved. The quality of the Packaging and/or Promotional Materials utilized by Licensee shall be in conformity with the Print

Samples.  If Licensor does not so respond within 30 days, the Print Samples shall be deemed approved by the Licensor.  The cost of all Print Samples, including any and all shipping charges, shall be borne exclusively by Licensee.

        4.6.2  If Licensee elects not to pursue Prior Approval of any Packaging and/or Promotional Materials in accordance with subsection 4.6.1 above, Licensee shall be deemed to have opted for Post-Utilization Review of such Packaging and/or Promotional Materials, and Licensee may proceed with use thereof so long as Licensee determines, in good faith, that such Packaging and/or Promotional Materials conform to a standard permitted by the introductory part of this Section 4.6.  Prior to or contemporaneously with Licensee's first public use of any Packaging and/or Promotional Materials for which Licensee did not seek Prior Approval in accordance with subsection 4.6.1, Licensee shall provide Licensor with written notice of Licensee's utilization thereof, and, if requested to do so by Licensor, shall make available to Licensor at no charge, Print Samples of such Packaging and/or Promotional Materials for the purpose of enabling Licensor to determine whether such Packaging and/or Promotional Materials comply with a standard permitted by the forepart of this Section 4.6.  If Licensor thereafter determines in Licensor's reasonable discretion (which shall not be arbitrarily or capriciously exercised) that the Packaging and/or Promotional Materials that were not previously approved do not comply with a standard permitted by the introductory part of this Section 4.6, Licensor shall have the right (which shall be exercised reasonably and, if challenged by Licensee, shall be subject to the dispute resolution procedures set forth in Article XV), by written notice to Licensee, to order that use of such Packaging and/or

Promotional Materials be discontinued immediately. The failure promptly to comply with any such order that is not challenged, or, if challenged, is upheld, will be deemed to be a breach of this License Agreement.

4.7     If Licensee at any time desires to have any Cookware or Bakeware Products or components thereof manufactured by a third party and if any such third party manufacturer utilizes the Licensed Intellectual Property Rights for any unauthorized purpose, Licensee shall cooperate fully in bring such utilization to an immediate halt. If as a result of the activities of any such third party manufacturer, Licensor is subjected to any penalty or expense, Licensee will on demand fully compensate Licensor for any cost or loss Licensor sustains.

4.8     All complaints concerning any Cookware or Bakeware Products or any of the Intellectual Property Rights, which are received, either directly or indirectly, by the Licensee and which could reasonably be expected to result either in litigation against the Licensor or, alternatively, in a discernible diminution in the value of any of the Intellectual Property Rights, shall be promptly forwarded by the Licensee to the Licensor.

4.9     All returns of Cookware or Bakeware Products sold by Licensee under this License Agreement shall be directed to Licensee. In the event that any Cookware or Bakeware Products sold by Licensee are returned to Licensor by consumers, Licensee shall reimburse Licensor for Licensor's actual costs of handling and shipping the same via United Parcel Service to Licensee. In the event that any Cookware or Bakeware Products sold by Licensor are sent to Licensor by distributors, merchants or wholesalers, Licensor shall decline to accept delivery

thereof and cause such products to be returned to the distributors, merchants or wholesalers from whom they were sent, together with instructions to deal with the Licensee with respect to any proposed return of products manufactured by it.

### ARTICLE V

### Trademarks and Service Marks

5.1     Except with the written consent of Licensor, neither Licensee nor any of its subsidiaries or affiliates will register or attempt in any country to register any of the Licensed Intellectual Property Rights (including any Marks), or any word, symbol or design which is so similar thereto as to suggest association with or sponsorship by Licensor.  In the event of breach of the foregoing, Licensee agrees, at its expense and at Licensor's request, immediately to terminate the unauthorized registration activity, and promptly to execute and deliver, or cause to be delivered, to Licensor such assignments and other documents as Licensor may require to transfer to Licensor all rights to the Marks or other Intellectual Property, registrations and applications involved.

5.2     Licensee shall not use or exercise any Licensed Intellectual Property Rights (including the right to use any trade name, trademark or service mark) granted by this License Agreement in any country unless or until an application has been filed for the relevant Licensed Intellectual Property Right to be duly registered in such country by Licensor.  Licensor shall promptly file applications for such registration upon request by Licensee at Licensee's expense.  If Licensor shall for any reason fail to file any such application within a reasonable time after being

requested to do so, Licensee shall have the right, on notice to Licensor, to make such filing; and in such event Licensor shall cooperate with Licensee in the exercise of such right. Licensor may determine whether or not to seek registration of any Intellectual Property Right solely for Cookware and Bakeware Products or for additional categories as well. Applications and registrations of Licensed Intellectual Property Rights solely for Cookware and Bakeware Products shall be Schedule II Rights for purposes of this License Agreement. Applications and registrations of Licensed Intellectual Property Rights not solely for Cookware and Bakeware Products shall be Schedule III Rights for purposes of this License Agreement.

5.3      Licensee shall also provide Licensor with specimens of use of the Licensed Intellectual Property Rights necessary for filing trademark applications, statements of use, renewals of registration and other such registration documents in timely fashion upon request.

5.4      Licensee agrees that it shall affix to every item and package of the Cookware and Bakeware Products a notice to indicate the rights of Licensor in the Licensed Intellectual Property Rights, including registration status of the Licensed Marks, and that the Cookware and Bakeware Products are manufactured and sold pursuant to a license from Farberware Inc.

## ARTICLE VI

### Patent and Copyright Marking

6.1      At all times from the Effective Date and until termination of the patents, Licensee shall affix to Cookware and Bakeware Products a statement,

identifying each applicable United States Patent, substantially in the following form:
"Licensed under United States Patent No. _____."

      6.2    At all times from the Effective Date and until termination of the copyrights, Licensee shall affix to all copies of copyrighted materials including copyrighted designs and related documentation, or portions thereof, made or used by Licensee hereunder, a copyright notice in either of the following forms: "Copyright [year], Farberware Inc. All Rights Reserved." or © [year], Farberware Inc. All Rights Reserved." The notice shall be affixed to all copies or portions thereof in such manner and location as to give reasonable notice of Licensor's claim of copyright.

**ARTICLE VII**

Reimbursement by Licensee

      Licensee shall reimburse Licensor for all official fees and attorney's fees in connection with renewal, maintenance, application for registration, license recordal, user registration and other fees pertaining to the Intellectual Property Rights licensed hereunder, including the Licensed Marks, patents and copyrights, and shall reimburse Licensor for all license recordal, user, registration and other fees necessary, in the view of Licensor, for Licensee to exercise the licenses and rights granted in this License Agreement for the manufacture, sourcing, and exploitation of Cookware and Bakeware Products. Notwithstanding the foregoing sentence of this Article VII, if any renewal, maintenance, application for registration, license recordal, user registration or other fees and related expenses (collectively "Maintenance Charges") are incurred in connection with the use of an Intellectual

Property Right by, or the protection of such Intellectual Property Right for, Licensee and other lawful users of such Intellectual Property Right (including Licensor), such maintenance charges shall be apportioned among the users of such Intellectual Property Right (including Licensee and Licensor) in accordance with their comparative usage and enjoyment of the benefits thereof.

## ARTICLE VIII

### Indemnification

8.1   Licensee shall exonerate, indemnify and hold harmless Licensor and the other Indemnified Parties at all times from and after the Effective Date against all claims, liabilities (including settlements entered into in good faith with Licensee's consent, not to be unreasonably withheld) and expenses (including reasonable attorneys' fees, disbursements and other charges) arising out of Licensee's activities hereunder, or out of any defect (whether obvious or hidden and whether or not present in any sample approved by Licensor) in any Cookware or Bakeware Products, or arising from personal injury, or property damage, or any infringement of any rights of any other person by the manufacture, sale, possession or use of any Cookware or Bakeware Products, or their failure to comply with applicable laws, regulations and standards.  Without limiting the generality of the foregoing, Licensee agrees to exonerate, indemnify and hold Licensor, Parent and their respective officers, directors and employees, harmless of, from and against any liability or expense arising from any claim that the Cookware and Bakeware Products or the use of the Intellectual Property Rights on or in connection with the Cookware and

Bakeware Products hereunder or any packaging, advertising or promotional material infringes on any patent, copyright or trademark right of any third party or otherwise constitutes unfair competition by reason of any prior rights acquired by such third party. The Indemnified Parties hereunder shall include Parent and Licensor and their respective officers, directors, employees and agents.

8.2     No warranty or indemnity is given by Licensor with respect to any liability or expense arising from any claim that use of any of the Intellectual Property Rights on or in connection with any of the Cookware and Bakeware Products hereunder or any packaging, advertising or promotional material infringes on any trademark right of any third party or otherwise constitutes unfair competition by reason of any prior rights acquired by such third party other than rights acquired from Licensor. It is expressly agreed that it is Licensee's responsibility to carry out such investigations as it may deem appropriate to establish that all Cookware and Bakeware Products, packaging, promotional and advertising material, which are manufactured or created hereunder, including any use made of the Intellectual Property Rights therewith, do not infringe such rights of any third party, and Licensor shall not be liable to Licensee if such infringement occurs.

## ARTICLE IX

### Insurance

9.1     To assure the exoneration and indemnification provided for in Section 8.1, Licensee shall, at Licensee's expense, obtain product liability insurance with respect to Licensed Products sold hereunder in the following amounts:

$1,000,000 - for injury to one person
$3,000,000 - for injury to two or more persons
$1,000,000 - for damages to property
$5,000,000 - umbrella

The insurance obtained by Licensee shall be in form and with insurers reasonably acceptable to Licensor, and shall provide coverage for Licensor as an additional insured. Upon the execution of this License Agreement, Licensee shall submit to Licensor original or duplicate policies of insurance or certificates of the insurers showing such insurance in effect, which policies or certificates shall provide that the insurer shall provide to Licensor written notice of alteration or cancellation of the insurance policy at least thirty (30) days prior to such alteration or cancellation of the insurance policy. Licensor shall indemnify Licensee from and against any claim that Licensee is not entitled to use the Licensed Intellectual Property Rights pursuant to this License Agreement because such use allegedly infringes on the rights of any third party granted to such third party by Licensor.

9.2    If available, Licensor shall purchase, at Licensor's expense (subject to the limitation hereinafter stated), an insurance policy insuring Licensee for a term of six years against all loss, liability or expense (including reasonable attorneys' fees, disbursements and other charges), which exceeds a specified deductible amount that is no greater than the deductible amount applicable under Licensee's own present product liability insurance policy and which shall have been incurred by Licensee as a result of product liability claims hereafter asserted against Licensee in respect of Cookware and Bakeware Products that were manufactured and sold by Licensor or U.S. Industries, Inc. or Hanson Industries, Plc. The aggregate

amount of the premiums that Licensor shall be required to pay for such coverage over the six year period shall not exceed One Hundred Thousand Dollars ($100,000). If such insurance coverage cannot be obtained at any price, Licensor's obligation to obtain such coverage shall be void. If such insurance coverage can be obtained but the cost thereof over the six year period would exceed One Hundred Thousand Dollars ($100,000), Licensee shall have the option to contribute the difference between the cost of such coverage and One Hundred Thousand Dollars or accept lesser coverage or a shorter term or a combination of any thereof. Licensor shall have no other obligation or liability to Licensee for product liability claims in respect of Cookware and Bakeware Products manufactured or sold by the Licensor and/or its predecessors.

## ARTICLE X

### Limitation of Licensor's Rights

Except as otherwise provided in Section 2.2, Licensor shall not use the Cookware and Bakeware Products Rights (as defined in the Agreement) for itself on Cookware and Bakeware Products during the Term. Licensor shall not license any other party to use the Cookware and Bakeware Products Rights on Cookware and Bakeware Products during the Term.

## ARTICLE XI

### Royalty Payments

On or before April 1 of each year during the Term, Licensee shall pay to Licensor the sum of One Dollar (U.S. $1.00) in return for the continuing license granted to Licensee herein.

## ARTICLE XII

### Unlicensed Use of Licensed Materials

12.1    Licensee agrees that it will not use the Licensed Intellectual Property Rights in any way other than as herein authorized.

12.2    Licensee agrees to give Licensor prompt written notice of any unlicensed use by third parties of Licensed Intellectual Property Rights, and Licensee will not, without Licensor's written consent, bring or cause to be brought any criminal prosecution, lawsuit or administrative action for infringement, interference with or violation of any Licensed Intellectual Property Rights.  Licensee agrees to cooperate with Licensor and, if necessary, to be named by Licensor as a sole complainant or co-complainant in any action against an infringer of the Licensed Intellectual Property Rights, and, notwithstanding any right of Licensee to recover same, legal or otherwise, Licensee agrees to pay to Licensor, and hereby waives all claims to, all damages or other monetary relief recovered in such action by reason of a judgment or settlement (other than for reasonable expenses incurred at Licensor's request, including reasonable attorney's fees, if Licensor has requested Licensee to retain separate counsel), whether or not such damages or other monetary relief, or

any part thereof, represent or are intended to represent injury sustained by Licensee as a licensee hereunder.

## ARTICLE XIII

### Termination

13.1    **Basic Term**.  Unless previously terminated, the term of this License Agreement ("Term"), and the licenses granted herein, shall continue from the Effective Date to April 30, 2196 (the "Expiration Date") and the licenses under each of the Copyrights and Patents shall continue from the Effective Date to the expiration of the term of such Copyright or Patent or any renewal or extension thereof.

13.2    Termination.  All of the rights and licenses granted by this License Agreement shall terminate upon a material breach by Licensee of any of the material terms and conditions of this License Agreement, which, after due notice of same from Licensor, remains uncured for a period of 180 days if it is determined in an arbitration proceeding conducted in accordance with Section 15.3 that such breach cannot be redressed by the payment of money damages alone and is so egregious as to warrant forfeiture of the rights and license granted to Licensee hereunder.

## ARTICLE XIV

### Effect of Termination

14.1    Upon termination of the licenses granted in this License Agreement, Licensee agrees, except as otherwise provided in Section 14.2, immediately to discontinue all use of the Licensed Intellectual Property Rights, including all use of any terms confusingly similar to the Licensed Marks, to cooperate

with Licensor or its appointed agent to apply to the appropriate authorities to cancel recording of this License Agreement and all related agreements from all government records, to destroy all printed materials bearing any of the Licensed Marks, and that all rights in the Licensed Intellectual Property Rights and the good will connected therewith shall remain the property of Licensor.

14.2   Upon termination of this License Agreement, Licensee shall have the right to sell, for a period of twelve (12) months thereafter, any Cookware and Bakeware Products on-hand or in the process of manufacture, provided that Licensee shall be bound by all other obligations imposed upon it pursuant to this License Agreement. Thereafter, all unsold inventory of Cookware and Bakeware Products must either be (i) reworked to change its appearance or (ii) destroyed. In no case may the inventory be "dumped" or sold below manufactured costs. The sell-off period provided for under this Section 14.2 shall not apply unless Licensee maintains the insurance coverage required under Article IX of this License Agreement throughout such period.

14.3   Effective immediately upon any termination prior to expiration of the Term specified in Section 14.1 hereof, Licensee shall grant to Licensor a royalty-free, paid-up, irrevocable, nonexclusive worldwide license for all rights of Licensee in, to and under patents and copyrights owned by, licensed to, or otherwise lawfully employed by, Licensee in the exercise of the rights granted under this License Agreement to use and exploit the Intellectual Property Rights in connection with Cookware and Bakeware Products.

## ARTICLE XV

### Dispute Resolution

15.1   Controversies between Licensor and Licensee shall be resolved, to the extent possible, by informal meetings and discussions in good faith between the parties.  Such meetings and discussions shall, upon commencement, occur daily for three consecutive days and for at least two hours each day.

15.2   If a dispute between the parties cannot be resolved by informal meetings and discussions within five days after commencement thereof, either party to this License Agreement may elect to exercise its right to require mediation at New York, NY of the dispute.  During mediation, the parties agree to negotiate in good faith as to the matter submitted to mediation.  In such event, the parties shall either: (i) appoint a single mediator if they can agree on one mediator; or (ii) if the parties cannot agree on a single mediator, each appoint one mediator, and the two mediators shall appoint a third mediator.  No mediator shall be an employee, officer, Board member, consultant, supplier or customer, or otherwise affiliated with a party to this License Agreement and shall be reasonably qualified to act as a mediator with respect to the negotiation of agreements similar to this License Agreement.  Each party shall share equally in the out-of-pocket costs for mediation; provided that the mediators shall be empowered to require one party to pay more than one half of the expenses if the mediators determine that such party is not negotiating in good faith in the mediation process.  Each party agrees to comply with all decisions, directions, instructions and procedures made or established in good faith by the mediator(s).  Any mediated resolution between the parties shall be as consistent as is practical with

the existing agreements between the parties and shall not serve to modify, amend or otherwise change their respective rights and obligations under such existing agreements.

15.3   If the parties are unable to resolve a controversy pursuant to Section 15.2 within fifteen (15) days after commencement of mediation proceedings, the dispute shall be settled by binding arbitration, and a corresponding judgment may be entered in a court of competent jurisdiction.   Arbitration of any dispute may be initiated by one party by sending a written demand for arbitration to the other party. This demand will specify the matter in dispute and request the appointment of an arbitration panel.   The mailing of process to Licensee at the address set forth in Section 16.3 will be deemed personal service and accepted by Licensee for any arbitration or proceeding with respect to this License Agreement.   The arbitration panel will consist of  one arbitrator named by Licensor, one arbitrator named by Licensee and a third arbitrator named by the two arbitrators so chosen.   The arbitration will be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association.   The situs of the arbitration will be in New York, New York.

## ARTICLE XVI

### Miscellaneous

16.1   <u>Amendment and Modification</u>.   Subject to applicable law, this License Agreement may be amended, modified or supplemented only by a written

agreement signed by the parties hereto with respect to any of the terms contained herein.

16.2   Waiver of Compliance; Consents.   Any failure of the Licensee, on the one hand, or the Licensor, on the other hand, to comply with any obligation, covenant, agreement or condition herein may be waived by the Licensee, or by the Licensor, respectively, only by a written instrument signed by the party granting such waiver, but such waiver or failure to insist upon strict compliance with such obligation, covenant, agreement or condition shall no operate as a waiver of, or estoppel with respect to, any subsequent or other failure.   Whenever this License Agreement requires or permits consent by or on behalf of any party hereto, such consent shall be given in writing in a manner consistent with the requirements for a waiver of compliance as set forth in this Section 16.2

16.3   Notices.   All notices and other communications hereunder shall be in writing and shall be deemed to have been duly given when delivered in person, by courier or registered or certified mail (postage prepaid, return receipt requested) to the respective parties at the following addresses (or at such other address for a party as shall be specified by like notice):

if to the Licensee, to it at:

Meyer Marketing Co. Ltd.
382 Kwun Tong Road
Kwun Tong, Kowloon, Hong Kong

Attn:   Mr. C.K. Wong
Group Financial Controller

with copies to:

Meyer Corporation
601 Gateway Boulevard
Suite 1150
South San Francisco, CA 94080
Attn.: Mr. Stanley K. Cheng, Chairman

with a copy to:

Baker & McKenzie
805 Third Avenue
29th Floor
New York, NY 10022
Attn.: Malcolm I. Ross, Esq.
            Richard L. Nevins, Esq.

if to the Parent or the Licensor, to the Parent at:

Syratech Corporation
175 McClellan Highway
East Boston, MA 02128-9114
Attn.: Mr. Leonard Florence,
            Chairman of the Board,
            President and Chief Executive Officer

with copies to:

Faye A. Florence, Esq.
Vice President and General Counsel
Syratech Corporation
175 McClellan Highway
East Boston, MA 02128-9114

and

Paul, Weiss, Rifkind, Wharton & Garrison
1285 Avenue of the Americas
New York, NY 10019-6064
Attn.: James L. Purcell, Esq.

16.4   No Assignment.  The Licensee may assign its rights herein, in

whole or in part, without the consent of the Licensor, provided that (i) the assignee

shall be a financially sound Person in relation to the obligations being assumed,
(ii) such assignee shall assume all obligations of the Licensee hereunder and agree to
be bound by the terms and conditions hereof, and (iii) Licensee shall at all times
remain liable (as principal and not as surety) for the payment and discharge of all
obligations undertaken by Licensee in this License Agreement.

16.5    Binding on Successors.  This License Agreement will inure to
the benefit of and be binding upon Licensor, its successors and assigns; and upon
Licensee, and its successors and assigns permitted pursuant to Section 16.4.

16.6    Governing Law.  This License Agreement shall be governed by
the laws of the State of New York.

16.7    Counterparts.  This License Agreement may be executed in one
or more counterparts, each of which shall be deemed an original, but all of which
together shall constitute one and the same instrument.

16.8    Entire Agreement.  This License Agreement, including the
documents or instruments referred to herein, embodies the entire agreement and
understanding of the parties hereto in respect of the subject matter contained herein.
There are no restrictions, promises, representations, warranties, covenants, or
undertakings, other than those expressly set forth or referred to herein.  Except as
expressly set forth herein, this License Agreement supersedes all prior agreements and
understandings between the parties with respect to such subject matter.

16.9    Remedies.  Except as expressly provided herein, all specific
remedies provided for in this License Agreement are cumulative and are not exclusive
of one another or of any other remedies available in law or equity.

16.10 <u>Survival</u>.  The provisions of this License Agreement relating to payment obligations, confidentiality, indemnification, and remedies, shall survive the expiration or termination of this License Agreement.

16.11 <u>Severability</u>.  If any provision of this License Agreement is declared by a court of competent jurisdiction to be invalid, illegal, unenforceable, or void then both parties shall be relieved of all obligations arising under such provision, but only to the extent that such provision is invalid, illegal, unenforceable, or void. If the remainder of this License Agreement is capable of substantial performance, then each provision not so affected shall be enforced to the extent permitted by law.

16.12 <u>Relationship</u>.  This License Agreement does not provide for a joint venture, partnership, agency or employment relationship between Licensor and Licensee.  The Licensee is not the agent or legal representative of Licensor for any purpose whatsoever.  The Licensee is not granted any right of authority to assume or to create any obligation or responsibility, express or implied, on behalf of or in the name of the Licensor or to bind Licensor in any manner or thing whatsoever.

IN WITNESS WHEREOF, the parties hereto have caused this License Agreement to be executed as of the day and year first above written.

FARBERWARE INC.                         MEYER MARKETING CO. LTD.

By:                                     By:

Name:  Leonard Florence                 Name:  ROBERT RAE
Title:  Chairman and President          Title:  PRESIDENT

Doc#:DS3:277016.3  24-069