Cem Ozer (CO 1718)
BUSHELL, SOVAK, OZER & GULMI LLP
60 East 42nd Street, Suite 2925
New York, New York 10165
Tel: 212-949-4700
cozer@bushellsovak.com

*Attorneys for Plaintiff*
*Farberware Licensing Company, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
FARBERWARE LICENSING COMPANY, LLC,           :
                                             :
                  Plaintiff,                 :      09-CV-2570 (HB and MHD)
                                             :
            – against –                      :      **ECF CASE**
                                             :
MEYER MARKETING CO., LTD., MEYER             :
INTELLECTUAL PROPERTIES, LTD., and           :
MEYER CORPORATION, US,                       :
                                             :
                  Defendants.                :
                                             :
-------------------------------------------------------------- x

**DECLARATION OF CEM OZER IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO QUASH
THE TRIAL SUBPOENA OF STANLEY CHENG AND
MOTION FOR COSTS FOR THE DEPOSITION OF STANLEY CHENG**

I, CEM OZER, declare as follows:

1.      I am a member of Bushell, Sovak, Ozer & Gulmi, LLP and counsel for

Farberware Licensing Company, LLC ("FLC"), Plaintiff in the captioned proceeding. I

submit this Declaration in Support of FLC's Opposition to Defendants MEYER

INTELLECTUAL PROPERTIES, LTD., and MEYER CORPORATION, US's ("Meyer")

motion to quash the trial subpoena served on Stanley Cheng and for the costs of his

deposition.

2.      Attached hereto as Exhibit 1 is a true and correct excerpts from the August

10, 2009 deposition of Stanley Cheng.

3.     Attached hereto as Exhibit 2 are true and correct excerpts from the July 14, 2009 deposition of Robert Rae.

4.     Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 18th day of August 2009.


                                        _s/ Cem Ozer_____
                                        Cem Ozer (CO 1718)

**OZER DECLARATION
(MOTION TO QUASH – CHENG)**

# EXHIBIT 1

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

--o0o--

FARBERWARE LICENSING

COMPANY, LLC,

         Plaintiff,

        Vs.      Case No. 09 CV 2570(HB)(MHD)

MEYER MARKETING CO., LTD.,

MEYER INTELLECTUAL PROPERTIES,

LTD., and MEYER CORPORATION,

U.S.,

         Defendants.

_____/

--o0o--

MONDAY, AUGUST 10, 2009

--o0o--

DEPOSITION OF

STANLEY CHENG

--o0o--

Reported By:  CAROL NYGARD DROBNY, CSR No. 4018

        Registered Merit Reporter

2

1
                          APPEARANCES:

2
        The Plaintiff:

3

4       BUSHELL, SOVAK, OZER & GULMI, LLP
        BY:  CHRISTOPHER J. SOVAK, Attorney at Law

5       60 East 42nd Street
        Suite 2925

6       New York, New York 10165
        312.949.4700

7       csovak@bushellsovak.com

8

9       For the Defendants:

10
        DYKEMA GOSSETT PLLC

11      By:  DEAN A. DICKIE, Attorney at Law
        10 South Wacker Drive

12      Suite 2300
        Chicago, Illinois  60606

13      312.876.1700
        ddickie@dykema.com

14

15      Also Present:

16      DEAN LUCA KRAUSE

17
                          --o0o--

18

19

20

21

22

23

24

25

24

1      A.    Meyer U.S. was granted the right to market

2   Farberware branded products, and it's been doing so

3   forever since -- MIH acquired the Farberware rights to

4   cookware and bakeware.

5      Q.    Okay.  And what's your understanding of the

6   rights that --

7          Well, you know which entity entered in to the

8   agreement with Farberware to license the rights for

9   cookware and bakeware?

10         MR. DICKIE:  Objection.  Lack of foundation.

11         THE WITNESS:  No.

12         MR. SOVAK:  Mark this as Exhibit 2.

13         (Exhibit No. 2 was marked for Identification.)

14   BY MR. SOVAK:

15     Q.    I'm going to show you what's been marked as

16   Cheng Exhibit 2.

17          It's a -- let me see the Bates stamps on it

18   for a second.

19          It's Bates stamped FLC0192 through FLC0242.

20   It's a document dated June 27th, 1996 entitled "License

21   Agreement;" is that correct?

22     A.    Yes.

23     Q.    Are you familiar with this document?

24         MR. DICKIE:  Object to the form of the

25   question.

25

1        THE WITNESS:  I can see it.  I don't recall,

2    but -- it's obviously the agreement executed with

3    Syratech.

4    BY MR. SOVAK:

5      Q.    Okay.  Well, I want you to look at page -- FLC

6    0219.  It's the signature page for this document between

7    Farberware Inc., and Meyer Marketing Company Limited; is

8    that correct?

9      A.    Correct.

10      Q.    And that was signed by Leonard Florence on

11    behalf of Farberware, Inc., and by Robert Rae on behalf

12    Mayer Marketing Company Limited; is that correct?

13      A.    Right.

14      Q.    Okay.  And is -- it your understanding that

15    this is the document that governs the relationship

16    between FLC and Meyer U.S. and MIP with regard to the

17    use of the Farberware name relating to cookware and

18    bakeware?

19        MR. DICKIE:  Object to the form of the

20    question.  Assumes facts.

21        THE WITNESS:  Yes.

22    BY MR. SOVAK:

23      Q.    And did you negotiate this agreement?

24      A.    I was involved in the early part of the

25    negotiation.

1     Q.   And who was that with?

2     A.   With Lenny Florence, and Peter Cameron was

3     present, and Mr. Florence's attorney.

4     Q.   Who is Mr. Florence's attorney?

5         Do you recall?

6     A.   No.

7         Oh, yes, I do now.  Jim Purcell.

8     Q.   Okay.  And you were negotiating a license for

9     cookware and bakeware; is that correct?

10        MR. DICKIE:  Object to the form of the

11    question.

12        THE WITNESS:  Yes.

13    BY MR. SOVAK:

14    Q.   And what's you're understanding of "cookware"

15    and "bakeware"?

16    A.   "Cookware," it's cooking utensils.

17    "Bakeware," it's products that are used for baking.

18    Q.   Okay.  When you say "cooking utensils," what

19    do you mean by that?

20    A.   It's products that people use to prepare food

21    in.

22    Q.   Okay.  Prepare food in -- pots and pans and

23    things of that nature?

24    A.   Right.

25    Q.   When you were entering in to this agreement,

71

1          MR. DICKIE:  Object to the form of the

2    question.

3          THE WITNESS:  No, I don't recall there was any

4    problem.

5    BY MR. SOVAK:

6      Q.   Is it your understanding that in -- sometime

7    in 2001 or 2001 FLC purchased the assets of Farberware,

8    Inc., from Syratech?

9          MR. DICKIE:  Objection.  No foundation he

10   knows anything about that.

11         THE WITNESS:  I don't remember the date.

12   BY MR. SOVAK:

13     Q.   But it's your understanding that FLC purchased

14   the assets of Farberware, Inc., from Syratech?

15     A.   I was told by Dean Krause.

16     Q.   Okay.  In 2001 and 2002 was Mr. Krause an

17   employee of Meyer?

18     A.   I don't recall that that was when I heard it.

19     Q.   Okay.  Do you know if Mr. Krause ever authored

20   any letters to FLC while he was at Lanahan & Reilly on

21   behalf of Meyer with regard to the transfer of the

22   assets from Farberware, Inc., Syratech to FLC?

23     A.   No.

24     Q.   Is it your understanding that Farberware

25   Licensing Company owns the Farberware trademark?

72

1          MR. DICKIE:  Objection.  Calls for

2     speculation.  No foundation.

3          THE WITNESS:  I assume.

4          MR. DICKIE:  His question was, was it your

5     understanding.  He didn't ask you to assume anything.

6          THE WITNESS:  Uh-huh.

7          Was it my understanding that Farberware

8     Licensing Corporation owns the right?

9     BY MR. SOVAK:

10     Q.   That Farberware Licensing Company owns the

11     Farberware trademark and that was something you obtained

12     in the asset purchase from Syratech, Incorporated?

13          MR. DICKIE:  Object to the form of the

14     question.

15          THE WITNESS:  Yes.

16     BY MR. SOVAK:

17     Q.   And is it is your understanding that

18     Farberware Licensing Company obtained Farberware, Inc.,

19     and Syratech's rights under the June 1996 license

20     agreement between Meyer and Syratech and Farberware,

21     Inc.?

22     A.   No, I'm not aware of that.

23     Q.   Okay.  Did Meyer -- do you know if Meyer

24     consented to transfer any of Syratech's or FL --

25          Withdrawn.

73

1          Do you know with whom Meyer corresponds with

2    regard to the 1996 license agreement?

3       A.   Before it was with Syratech.

4       Q.   Okay.  Since 2002 do you have any

5    understanding of -- with whom Meyer corresponds with

6    regard to the June 1996 license agreement?

7       A.   Well, some time after 1996 the Farberware

8    brand, the FLC business, was sold to Peter Cameron and

9    company, and then, yes, the ownership transferred to FLC

10   at the time, and then we began to communicate with --

11   with FLC.

12      Q.   Okay.  So it's your understanding now that FLC

13   is now the licensor under the June 1996 agreement?

14      A.   Yes.

15      Q.   We talked a little bit about Meyer licensing

16   things.

17          What other licenses does Meyer have aside from

18   the license for cookware and bakeware with -- with FLC?

19      A.   I don't understand the question.

20      Q.   I'm sorry.  It was poorly phrased.

21          Does Meyer have other licenses for the

22   production of cookware and bakeware aside from the

23   license it holds for Farberware brands?

24      A.   You mean the Farberware brand?

25      Q.   No, I mean aside from the Farberware brand.

74

1     A.   Yes, we have.

2     Q.   What licenses are those?

3     A.   We are a licensee of KitchenAid, licensee of

4   Rachael Ray, and Paula Deen in this country.

5     Q.   Okay.  Any others?

6         MR. DICKIE:  Object to the form of the

7   question.

8         Others with MUS?

9   BY MR. SOVAK:

10    Q.   Let me clarify that.

11        Are these licenses that MUS holds?

12        MR. DICKIE:  I thought that was your question.

13        THE WITNESS:  Licenses that Meyer holds, not

14   MUS.

15   BY MR. SOVAK:

16    Q.   When you say "Meyer," who are you referring

17   to?

18    A.   To -- Meyer, MIH, under another entity.

19    Q.   And is that other entity MIP who holds those

20   licenses or --

21    A.   Yes, I assume.

22    Q.   Okay.  Are you familiar with the terms of any

23   of those licenses?

24    A.   No.

25    Q.   Do you know what percentage royalties Meyer

1    pays under the KitchenAid license?

2        MR. DICKIE:  Object to the form of the

3    question.

4        THE WITNESS:  I don't know.

5    BY MR. SOVAK:

6        Q.    Do you know if there's any minimum under the

7    KitchenAid license?

8        A.    I don't know.

9        Q.    Do you know -- what Meyer paid KitchenAid

10   under the KitchenAid license last year?

11       A.    I don't know also.

12       Q.    Okay.  Do you know the term of the KitchenAid

13   license in terms of how long it lasts?

14       MR. DICKIE:  Object to the form of the

15   question.  No foundation, given his other answers.

16       Why are you asking those questions given his

17   answers?

18       And it's not relevant.

19       THE WITNESS:  The KitchenAid license has a

20   period of a few years, and I don't recall how many

21   years, and it does have to be renewed from time-to-time.

22   BY MR. SOVAK:

23       Q.    Has Meyer ever had a dispute with KitchenAid

24   regarding any aspect of its license?

25       A.    No.

1  BY MR. SOVAK:

2      Q.   Do you believe that's the same type face font

3  for Prestige?

4          You believe that's the same on exhibit -- on

5  the exhibit you're holding, which is the Chroma cookware

6  set, as it is on Exhibit Number 5?

7      A.   As I said, it's difficult to see, but I

8  believe so, yes.

9      Q.   Do you know if Meyer has been attempting to

10  alter its packaging to more clearly call out the

11  Prestige brand when it's included with Farberware brand

12  cookware?

13      A.   To more clearly call it out?

14          MR. DICKIE:  Object to the question.  Assumes

15  facts.

16          THE WITNESS:  I would have thought that this

17  is actually quite clear in that we highlighted tools in

18  a separate box, that this is to call out to the consumer

19  that they are utensils, Prestige branded utensils in

20  here.

21  BY MR. SOVAK:

22      Q.   Let me represent to you that --

23          Well, if you were to learn that there was a

24  consumer survey that found that roughly 75 percent of

25  the people viewing these call out boxes still remained

1    confused as to whether the items were Farberware items,

2    would you expect Meyer to alter its packaging to address

3    that?

4         MR. DICKIE:  Object to the form of the

5    question unless you lay a complete foundation with

6    respect to the nature and extent and who conducted the

7    survey.

8         It's an unfair hypothetical.

9         THE WITNESS:  The question again, please.

10   BY MR. SOVAK:

11    Q.   Okay.  There's a man named Hal Porret, who

12   conducted a survey on behalf of FLC in this litigation,

13   where he looked at call out boxes much like the one that

14   you're looking at there.

15        The survey showed responses of about 75

16   percent consumer confusion as to the source of the

17   Prestige tools, most people believing that they were

18   Farberware.

19        MR. DICKIE:  Same objection.

20   BY MR. SOVAK:

21    Q.   Would you expect Meyer to alter its packaging

22   to address the consumer confusion that's been

23   demonstrated by the survey?

24        MR. DICKIE:  Same objection.

25        You still haven't told him all the facts that

1    underlie that survey.

2         THE WITNESS:  First time I'm hearing about it,

3    first of all.

4         And, if there is confusion, you know, Meyer

5    would attempt to do everything that we can to make it

6    clearer going forward so it did not -- so that the

7    consumer would not be confused.

8    BY MR. SOVAK:

9    Q.    Do you know if Myers has done any of its own

10   surveys to determine whether or not there's any consumer

11   confusion generated as a result of this packaging?

12   A.    No.

13        MR. SOVAK:  Why don't we take a five-minute

14   break.

15        (Thereupon a recess was taken at 2:49 p.m.

16        and the deposition resumed at 2:56 p.m.)

17   BY MR. SOVAK:

18   Q.    I believe you indicated before that Exhibit 2,

19   which is the license agreement between Meyer and FLC, is

20   the document that governs the rights and obligations of

21   the parties with regard to the use of the Farberware

22   trademark cookware and bakeware; is that correct?

23   A.    Yes.

24   Q.    And Mr. Rae signed that document; is that

25   correct?

106

1          MR. DICKIE:  Objection.  Asked and answered.

2          THE WITNESS:  Yes.

3     BY MR. SOVAK:

4     Q.    And did he do that at your direction?

5     A.    Yes.

6     Q.    And, as far as you're aware, the terms of that

7     document are what govern the relationship between the

8     parties?

9          MR. DICKIE:  Objection.  Asked and answered

10    two questions ago.

11         THE WITNESS:  Say that again, please.

12    BY MR. SOVAK:

13    Q.    Withdrawn.

14         Are you aware of any written waiver or

15    modification with regard to any of the terms of the

16    agreement?

17    A.    No.

18    Q.    And when I say "the agreement," I mean the

19    license agreement.

20    A.    Yes.

21    Q.    Is -- let me ask more clearly.

22         Are you aware of any written waiver or

23    modification regarding any of the terms of the license

24    agreement between FLC and Meyer with regard to cookware

25    or bakeware?

**OZER DECLARATION
(MOTION TO QUASH – CHENG)**

# EXHIBIT 2

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

FARBERWARE LICENSING COMPANY,   )

LLC,                          )

    Plaintiff,          )

  vs.                        )

MEYER MARKETING CO., LTD.,      )No. 09 CV 2570

MEYER INTELLECTUAL         )   (HB and MHD)

PROPERTIES, LTD., and MEYER    )

CORPORATION, U.S.             )

    Defendants.          )

    The deposition of ROBERT RAE, called for

examination pursuant to the Rules of Civil

Procedure for the United States District Courts

pertaining to the taking of depositions, taken

before GINA M. LUORDO, a notary public within and

for the County of Cook and State of Illinois, at

One Maritime Plaza, San Francisco, California, on

the 14th day of July, 2009, at the hour of

9:58 a.m.

Reported by:  Gina M. Luordo, CSR, RPR, CRR

License No.:  084-004143

2

1    APPEARANCES:

2        BUSHELL, SOVAK, OZER & GULMI, LLP,

3        BY:  MR. CHRISTOPHER J. SOVAK

4        60 East 42nd Street, Suite 2925

5        New York, New York  10165

6        (312) 949-4700

7            Representing the Plaintiff;

8

9        DYKEMA GOSSETT PLLC

10       BY:  MR. DEAN A. DICKIE

11       10 South Wacker Drive, Suite 2300

12       Chicago, Illinois  60606

13       (312) 876-1700

14           Representing the Defendants.

15

16

17

18

19

20

21

22

23

24   Also Present:  Mr. Dean Luca Krause

1    you'd let me get the whole question out just so

2    it's clear on the record, that would be great.

3        A.   Fine.

4        Q.   When was the last time you reviewed the

5    license agreement between Meyer and FLC?

6        A.   I don't remember.

7        Q.   And by license agreement, when I say

8    license agreement today, I'm referring to the June

9    1996 agreement between Meyer and Farberware.

10       A.   To the best of my knowledge, that would

11   have been the last time.

12       Q.   So the last time you reviewed the license

13   agreement would have been when you signed it?

14       A.   In '96, yes.

15       Q.   What was your role in the negotiation of

16   the license agreement with Farberware, if any?

17       A.   I really didn't negotiate the license

18   agreement.  Lenny Florence and Stanley Cheng

19   basically negotiated it.  Stanley talked to me and

20   Bill Perino about the licensing agreement and

21   whether we should do it or not, but I didn't do any

22   of the negotiating.

23       Q.   When you say Stanley, you're referring to

24   Stanley Cheng?

1    A.  Yes.

2    Q.  What did Mr. Cheng tell you about the

3  license agreement at that time in the conversations

4  that I think you said he had with you and

5  Mr. Perino?

6    MR. DICKIE:  Object to the form of the

7  question.

8  BY MR. SOVAK:

9    Q.  You can answer.

10    A.  Can you repeat the question?

11    Q.  I believe that you said Mr. Cheng had

12  conversations with you and Mr. Perino regarding the

13  license agreement and whether you should do it?

14    A.  Yes.

15    Q.  Can you tell me what the substance of

16  those conversations were?

17    MR. DICKIE:  Same objection.

18    THE WITNESS:  Basically whether we should do

19  it, whether it was good for the company.  I think

20  we were all in agreement that it was good for the

21  company, and whether we should purchase the brand

22  or license the brand.  Stanley wanted to purchase

23  the brand, and Lenny didn't want to sell the brand.

24    It was a long time ago, but basically that