UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
FARBERWARE LICENSING                         :
COMPANY LLC,                                 :
                     Plaintiff,          :          09 Civ. 2570 (HB)
                                         :
          -against-                      :          OPINION & ORDER
                                        :
MEYER MARKETING CO., LTD., MEYER             :
INTELLECTUAL PROPERTIES, LTD., and           :
MEYER CORPORATION, U.S.,                     :
                                        :
                     Defendants.         :
-------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., United States District Judge:**

      The trial in this trademark infringement and breach of contract action began on August 17, 2009. Before trial, both parties filed numerous motions in limine to preclude the introduction of various types of evidence at trial. The motions were fully submitted by the Plaintiff Farberware Licensing Company LLC ("FLC" or "Plaintiff") on August 5, 2009 and by Defendants Meyer Marketing Co., Ltd. ("MMC"), Meyer Intellectual Properties, Ltd. ("MIP") and Meyer Corporation, U.S. ("MUS") (collectively, "Meyer" or "Defendants") on August 7, 2009. The majority of the motions were resolved by rulings from the bench on the first day of trial; however, the Court reserved decision on one of FLC's motion, the motion in limine to preclude evidence of Plaintiff's motives for having brought the instant action. Part and parcel of the motion seeks to preclude evidence of Peter Cameron's involvement in the management of other unrelated companies. The Court heard oral argument on the motion on August 20, 2009. For the reasons stated on the record and as discussed further below, FLC's motion is denied, but the evidence that will be admitted shall be circumscribed to the extent discussed herein to avoid unnecessarily prejudicial, time-consuming or duplicative testimony.

## I.  BACKGROUND

      FLC's claims arise out of a 1996 Licensing Agreement between Farberware Inc., FLC's predecessor, and MMC, which granted MMC the exclusive right to use and exploit the FARBERWARE® name and related trademarks in connection with the sourcing, manufacturing, distribution and sale of specific "Cookware and Bakeware Products," as defined in the Agreement.[1]  Based on its allegations that Meyer has used the FARBERWARE® trademarks in

---

[1] MMC sold its right under the Agreement to MIP, and such sale was acknowledged and consented to by FLC.

1

a manner that is outside the scope of the License Agreement and in a manner that is likely to cause consumer confusion, it has asserted numerous causes of action including trademark infringement, trademark dilution, unfair competition, breach of contract, breach of the covenant of good faith and fair dealing and deceptive trade practices.  Meyer, in turn, has asserted numerous affirmative defenses, which include acquiescence and estoppel, and counterclaims, which include breach of contract, breach of the covenant of good faith and fair dealing and unfair competition.

### III.  DISCUSSION

Based on Meyer's pleadings and deposition testimony of Peter Cameron, an executive of FLC, Plaintiff adduced that Meyer intends to introduce evidence of what they characterize as "ulterior motives" on the part of FLC for bringing this action to terminate the License Agreement.  That evidence of Cameron's involvement in the management of FLC signals the onset of a path towards the turn-around and sale of FLC or its business, that this is Cameron's m.o.  FLC argues this evidence is irrelevant under Rule 401 of the Federal Rules of Evidence and would be unduly prejudicial under Rule 403.  For its part, Meyer contends that FLC's motives in seeking to obtain greater revenues than were provided in the License Agreement, and its sudden departure from establish business practices in its approvals of certain products, are directly relevant to Meyer's counterclaims for breach of contract, breach of the covenant of good faith and fair dealing and unfair competition.

FLC's argument in support of its motion to bar the motivation evidence is premised on the well-established rule that motive is irrelevant to the issue of whether a non-breaching party properly terminated a contract where that party has established an independent legal right to terminate.  *See, e.g.*, *Major Oldsmobile, Inc. v. General Motors Corp.*, 95-7595, 1996 U.S. App. LEXIS 11443, at *7-8 (2d Cir. May 17, 1996); *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 97-9056, 1998 U.S. App. LEXIS 23532, at *3 (2d Cir. Sept. 14, 1998); *Satcom Int'l Group PLC v. Orbcomm Int'l Partners, L.P.*, 98 CIV. 9095 (DLC), 2000 U.S. Dist. LEXIS 7739, at *61 (S.D.N.Y. June 6, 2000); *Refinement Int'l Co. v. Eastbourne N.V.*, 815 F. Supp. 738, 742 (S.D.N.Y. 1993); *Newfield v. General Motors Corp.*, 84 A.D.2d 548, 549 (2d Dep't 1981), *aff'd*, 56 N.Y.2d 818 (1982).  However, on the facts of this particular case, FLC's argument fails for two reasons.  First, as the case law shows, in each of the circumstances where this rule was applied to preclude evidence of motive, one of the parties had already terminated the contract and the court was able to find, as a matter of law, that the termination was legally justified.  In

2

contrast, here, FLC has not yet terminated the License Agreement; rather, it brought this action for breach of contract seeking, among other things, the remedy of termination. The question of whether Meyer's actions constituted a material breach of the License Agreement, and therefore whether a termination of the License Agreement would be justified, is an open question to be decided by the jury based on the evidence adduced at trial. Clearly, the Court cannot decide at this juncture that termination would be legally justified such that evidence of motivation must necessarily be precluded. That FLC has alleged, and is mounting an effort at trial to prove, that termination is legally justified is simply not enough.

     Second, FLC's argument is flawed because it is based on the faulty assumption that the only claims at issue in this action are FLC's claims based on Meyer's alleged misconduct in the use of the FARBERWARE® trademarks. FLC overlooks that Meyer seeks to introduce the disputed evidence in support of its many counterclaims and affirmative defenses. In this regard, this case is factually similar to Judge Scheindlin's decision in *ESPN, Inc. v. Office of the Commissioner of Baseball*, 76 F. Supp. 2d 383 (S.D.N.Y. 1999). In that case, the parties had entered into a telecasting agreement pursuant to which the Office of the Commissioner of Baseball ("Baseball") granted ESPN the right to telecast regular season major league baseball games on its primary service. One of the provisions of the agreement permitted ESPN to preempt any baseball game telecast in favor of an event of "significant viewer interest," so long as it obtained prior written approval from Baseball. *Id.* at 386-87. On two occasions, ESPN sought Baseball's approval to preempt a telecast in favor of an NFL football telecast, but Baseball refused to consent; after ESPN ran the NFL telecast anyway, Baseball terminated the contract, and ESPN sued for breach. *Id.* at 387. ESPN alleged Baseball materially breached the contract by, among other things, unreasonably withholding its approval of ESPN's preemption requests. *Id.* ESPN argued that Baseball's reasons for terminating the contract were pretextual, and that the real reason it withheld its consent was to force a renegotiation of the agreement to squeeze ESPN for additional fees. *Id.* at 408. Before trial, Baseball filed a motion in limine to preclude ESPN from introducing this evidence, arguing, as FLC does here, that such evidence is irrelevant to Baseball's decision to terminate the agreement. The court agreed, but found that "[t]he problem [was] that this principle has no application to the instant dispute" because ESPN sought to introduce the evidence, not as proof of Baseball's motive for termination of the contract, but rather as an effort to show that Baseball's refusal to grant preemption approval was unreasonable and therefore a breach of the agreement. *Id.* at 409. Thus, the court found that

"[t]he issue of Baseball's purported termination is distinct from the issue of reasonableness in withholding approval," and that the motivation evidence was admissible to assist the jury in determining the latter issue. *Id.*

Similarly, here Meyer seeks to show that FLC breached the License Agreement by, among other things, licensing the right to make enamel-covered tea kettles to a third party from whom FLC could extract a significantly higher royalty fee and withholding approval of certain bundled packages and kettles unreasonably. These issues are directly relevant to Meyer's counterclaims and affirmative defenses. Indeed, such a showing is an element of Meyer's counterclaim for breach of the duty of good faith and fair dealing. *See, e.g.*, *India.com, Inc. v. Dalal*, 07-0944-cv, 2009 U.S. App. LEXIS 8962, at *5-6 (2d Cir. Apr. 28, 2009); *cf. Dunkin' Donuts Franchised Restaurants, LLC v. 1700 Church Ave. Corp.*, CV 07-2446 (CBA) (MDG), 2008 U.S. Dist. LEXIS 33457, at *4-5 (E.D.N.Y. Apr. 23, 2008) (finding that while motivation is irrelevant to show reasons for termination, it would be relevant to support a defense of bad faith). Moreover, this Court has found previously that evidence of motivation in terminating a contract can be relevant and admissible where the breach is so severe as to allow punitive damages, to which Meyer claims to be entitled here. *See Brown v. Paul Revere Life Ins. Co.*, No. 00 Civ. 9110 (KMW) (HBP), 2001 WL 1230528 (S.D.N.Y. Oct. 16, 2001).

In short, the potential probative value outweighs any unfair prejudice that might result, and the evidence will not, at this juncture, be precluded under Rule 403.[2] However, the potential for prejudice remains insofar as Defendants may attempt to paint Cameron's character as malicious or some sort of brigand whose conduct is somehow morally reprehensible. The Defendants should be careful to limit the evidence and the cross-examination of Cameron to issues that are directly relevant to the counterclaims and defenses, both in their examinations and in summation. FLC may, of course, object to particular questions or exhibits as they arise, and I reserve my ability to exclude any such evidence to the extent it exceeds the authorization I have given the Defendants herein. Assuming Cameron is going to testify, Defendants are directed to draft a limiting instruction which they will share with FLC, and if agreeable language can be fashioned, the Court will read it to the jury.

---

[2] In its reply brief, FLS makes the argument for the first time that the evidence relating to Cameron's previous business dealings is inadmissible character evidence under Rule 404. Arguments made for the first time need not be considered by a court. *E.g.*, *American Hotel Int'l Group Inc. v. OneBeacon Ins. Co.*, 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009); *Malay v. City of Syracuse*, 08-CV-00599 (NPM/GHL), 2009 U.S. Dist. LEXIS 59978, at *11 (N.D.N.Y. July 14, 2009). However, even considering FLC's argument on its merits, it appears that the evidence would be used for a non-character purpose – i.e., to show motive of FLC and/or Cameron. *See* Fed. R. Evid. 404(b).

4

## IV. CONCLUSION

For the foregoing reasons, FLC's motion is denied. Defendants are directed to limit their introduction of evidence on this topic to the extent discussed in this opinion. The Clerk of this Court is instructed to close this motion.

**IT IS SO ORDERED.**

**New York, New York**
**August 22, 2009**

_____
U.S.D.J.