```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12-30-09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
FARBERWARE LICENSING       :
COMPANY LLC,               :
                 Plaintiff,        :     09 Civ. 2570 (HB)
                             :
        -against-         :     OPINION & ORDER
                             :
MEYER MARKETING CO., LTD., MEYER       :
INTELLECTUAL PROPERTIES, LTD., and     :
MEYER CORPORATION, U.S.,               :
                             :
               Defendants.          :
------------------------------------------------------------x

**Hon. HAROLD BAER, JR., United States District Judge:**

      Plaintiff Farberware Licensing Company ("FLC") filed its Complaint against Defendants Meyer Marketing Co., Ltd. ("MMC"), Meyer Intellectual Properties, Ltd. ("MIP") and Meyer Corporation, U.S. ("MUS") (collectively, "Meyer") on March 20, 2009 alleging various claims that arose out of Meyer's use of FLC's FARBERWARE® trademark. FLC's Complaint alleged the following causes of action: (1) trademark infringement in violation of § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (2) false designation of origin and false advertising in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (3) trademark dilution in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c); (4) trademark dilution under New York State Law; (5) unfair competition under New York State common law; (6) deceptive acts and practices in violation of New York Gen. Bus. Law § 349; (7) breach of contract; and (8) breach of the implied covenant of good faith and fair dealing. Meyer filed its Answer and Counterclaims on June 2, 2009 in which it raised numerous affirmative defenses to FLC's claims and brought counterclaims against FLC for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) unfair competition; (4) violation of section 17200 of the California Business and Professional Code; (5) declaratory judgment as to its right to use the FARBERWARE® marks in a variety of ways; and (6) equitable estoppel.

      The jury trial of this action took place during the weeks of August 17 and August 24, 2009. After the jury returned its verdict on August 27, 2009, the Court entered judgment in accordance with the verdict as follows: (a) in favor of FLC on a non-material breach of contract in the amount of $1; (b) in favor of Meyer on its counterclaims for unfair competition in the amount of $195,000; and (c) in favor of Meyer on its counterclaim for breach of contract in the

amount of $1. Among other things, the jury found that FLC had failed to prove its claims under the Lanham Act for trademark infringement, dilution and false designation of origin. Meyer now moves to recover attorneys' fees pursuant to Lanham Act § 35(a), 15 U.S.C. § 1117(a), and for costs as the prevailing party pursuant to 28 U.S.C. § 1920 and 15 U.S.C. § 1117. For the reasons set forth below, Meyer's motion for attorneys' fees is denied and its motion for costs is granted in part and denied in part.

## I. DISCUSSION

### A. Motion for Attorneys' Fees

#### 1. *Legal Standard*

Section 35(a) of the Lanham Act provides a narrow exception to the American Rule that each party must bear its own attorneys' fees. Under the statute, a court may award attorneys' fees in "exceptional cases." 15 U.S.C. § 1117(a). The attorneys' fee provision "endeavors to afford protection to defendants against unfounded suits brought by trademark owners for harassment and the like." *IMAF, S.p.A. v. J.C. Penney Co., Inc.*, 810 F. Supp. 96, 98 (S.D.N.Y. 1992). The Second Circuit has required that when a successful defendant applies for attorneys' fees under § 35(a) of the Lanham Act, the defendant must show the plaintiff's bad faith in bringing or prosecuting the suit. *See, e.g., Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*, 317 F.3d 209, 221 (2d Cir. 2003); *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 194-95 (2d Cir. 1996). Bad faith has been found, for example, where the circumstances of a case have created "a substantial overtone . . . to warrant an inference that [the] case was initiated as a competitive ploy." *Mennen Co. v. Gillette Co.*, 565 F. Supp. 648, 657 (S.D.N.Y. 1983); *see also Multivideo Labs., Inc. v. Intel Corp.*, 99 Civ. 3908 (DLC), 2000 WL 502866, at *1 (S.D.N.Y. Apr. 27, 2000) ("A finding of bad faith is warranted when the claim is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons.") (quoting *Hirschfeld v. Bd. of Election*, 984 F.2d 35, 40 (2d Cir. 1992)); *Universal City Studios, Inc. v. Nintendo Co., Ltd.*, 797 F.2d 70, 77 (2d Cir. 1986) (bad faith shown where Lanham Act claim brought "merely to join in the [defendant's] profits").

Bad faith might also be shown where a plaintiff's claim is completely without merit. *See, e.g., Viola Sportswear, Inc. v. Mimun*, 574 F. Supp. 619, 620-21 (E.D.N.Y. 1983); *see also IMAF*, 810 F. Supp. at 100 (bad faith shown where plaintiff failed to produce survey evidence, or any other type of evidence, to show consumer confusion). While some courts have found bad

2

faith based on the meritlessness of a plaintiff's claims, "[t]he circumstances were generally such in those cases, however, that a court could draw no inference other than that the actions had been brought for improper purposes." *Multivideo*, 2000 WL 502866 at *2. Thus, the mere fact that a plaintiff ultimately did not succeed in its Lanham Act claims does not dictate an inference of bad faith. *E.g.*, *Gordon & Breach Sci. Publishers S.A. v. American Inst. of Physics*, 166 F.3d 438, 439 (2d Cir. 1999) (per curium) ("The present litigation may not have been strong enough on the merits but raised enough nonfrivolous claims to preclude the awarding of fees."); *Silberstein v. Fox Entm't Group, Inc.*, 536 F. Supp. 2d 440, 445 (S.D.N.Y. 2008); *Textile Deliveries, Inc. v. Stagno*, 90 Civ. 2020, 1994 WL 202620, at *1 (S.D.N.Y. May 23, 1994). Moreover, while a finding of bad faith is required for fees to be imposed under § 35(a), a finding of bad faith in itself does not require the imposition of fees. *See Nikon v. Ikon Corp.*, 803 F. Supp. 910, 928 (S.D.N.Y. 1992). Whatever the circumstances, the decision of whether to impose attorneys' fees "falls well with the district court's discretion." *Conopco*, 95 F.3d at 194.

### 2. *Application to Meyer*

Here, Meyer contends that this is an "exceptional case" and that it is therefore entitled to attorneys' fees because FLC's Lanham Act claims were "baseless, capricious, unreasonable or otherwise pursued in bad faith." In support of this conclusion, Meyer argues that FLC's alleged bad faith is illustrated by the facts that (1) FLC had previously filed a virtually identical complaint against another licensee and succeeded in using that litigation to extract extra-contractual benefits from the licensee; (2) FLC accused Meyer of failing to submit goods for approval only later to admit that it had lost and then found the requested sample that had been timely submitted by Meyer; (3) FLC refused to dismiss claims that discovery showed lacked merit, including the dilution claims and any claims related to the stainless-steel tea kettles; (4) FLC abandoned the alternative dispute resolution process; and (5) FLC fought a motion to transfer venue knowing that all of Meyer's witnesses would be required to travel from California to New York. Meyer also places much emphasis on the jury's verdict in its favor on its counterclaims for unfair competition, arguing that this verdict in itself establishes the requisite "bad faith" for attorneys' fees, as bad faith is a required element of a claim for unfair competition. *See, e.g., Empresa Cubana Del Tabaco v. Culbro Corp.*, 399 F.3d 462, 485 (2d Cir. 2005) ("A plaintiff claiming unfair competition under New York law must show that the defendant acted in bad faith.") (citing *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir.1997)). Finally, Meyer contends that it is entitled to fees because FLC never

3

produced any evidence to show it had a good faith basis to allege its claimed injuries, sustained any actual damage to reputation, suffered any dilution of its trademarks, or experienced any actual consumer confusion. In short, Meyer contends that FLC merely brought this case as a ploy to extract extra-contractual concessions from Meyer. FLC maintains that Meyer is not entitled to fees as it had a reasonable and good faith basis to bring and pursue its Lanham Act claims.

Although both parties devoted much of their papers to a rehash of the factual and legal bases for their claims and defenses, I decline to retry this case on a post-trial motion for fees. Rather, it is sufficient here to say that, based on the evidence produced at trial and the arguments the parties put forth at that time, the Court finds that this is not an "exceptional case" that warrants an award of attorneys' fees under the Lanham Act. Although FLC ultimately was unsuccessful on its Lanham Act claims before the jury, there is little evidence that the claims were brought, or that FLC continued to prosecute them, in bad faith or with the purpose to harass Meyer. The fact that the jury did not find that FLC had proven those claims by a preponderance of the evidence does not lead to the conclusion that they were necessarily brought in bad faith. Further, the jury's finding of bad faith on the unfair competition claims is irrelevant here, as the relevant inquiry is whether FLC's litigation tactics were premised on bad faith, and not whether its pre-Complaint conduct in preventing Meyer from using the FARBERWARE® marks in certain ways was done in bad faith. Accordingly, Meyer's motion for attorneys' fees pursuant to Lanham Act § 35(a) is denied.[1]

## B.   Motion for Costs

### 1. *Legal Standard*

Meyer also requests an award of costs in the amount of $396,403.21 pursuant to 28 U.S.C. § 1920 and Lanham Act § 35(a). Courts generally award costs to prevailing parties in cases that involve claims brought under the Lanham Act. *See, e.g.*, *Protection One Alarm Monitoring, Inc. v. Executive Protection One Security Serv., LLC*, 553 F. Supp. 2d 201, 210 (E.D.N.Y. 2008) (citing *Tri-Star Pictures, Inc. v. Unger*, 42 F. Supp. 2d 296, 306 (S.D.N.Y. 1999)). Although both § 1920 and Local Rule 54.1 set forth certain categories of costs that may

---

[1] Meyer also contends that this is an "exceptional case" because the relief that FLC sought far outweighed the alleged wrongful conduct of which FLC complained. However, courts in this district have found that fees are not warranted where a plaintiff brings a non-frivolous claim coupled with an overly exaggerated damage claim. *See Yeshiva Univ. v. New Eng. Educ. Inst.*, 631 F. Supp. 146, 149 (S.D.N.Y. 1986). Thus this argument, too, is insufficient to warrant an award of attorneys' fees.

4

be awarded to a prevailing party, a party may ordinarily also tax "reasonable costs that are ordinarily charged to clients in the legal marketplace." *Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, (S.D.N.Y. 2001) (quoting *Anderson v. City of N.Y.*, 132 F. Supp. 2d 239, 245 (S.D.N.Y. 2001)). Under the Lanham Act, "[o]ut of pocket litigation costs are generally recoverable if they are necessary for the representation of the client." *Tri-Star*, 42 F. Supp. 2d at 306. Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that costs are awardable to a prevailing party "as of course," and "the losing party has the burden to show that costs should not be imposed." *Whitfield v. Scully*, 241 F.3d 264, 270 (2d Cir. 2001). Accordingly, "the district court may not deny costs to the prevailing party without explanation of adequate reasons." *Perks v. Town of Huntington*, 99-CV-4811 (JS), 2008 U.S. Dist. LEXIS 108845, at *5 (E.D.N.Y. Mar. 31, 2008), *aff'd*, 331 Fed. Appx. 796 (2d Cir. 2009).

### 2. *Application to Meyer*

FLC does not dispute that Meyer may be considered a "prevailing party" in this case. Rather, FLC argues that Meyer is not entitled to costs for two principal reasons. First, FLC contends that the Court's judgment, entered October 13, 2009, decreed that any relief requested but not expressly granted in the judgment was denied; thus, because Meyer had requested costs in its counterclaims and the judgment did not provide for costs, FLC argues that the Court implicitly denied any such request. Second, FLC contends that costs should be denied because Meyer did not file a bill of costs as required under Federal Rule 54 and Local Rule 54.1. In the alternative, FLC contends that if the Court is to award costs, then certain deductions should be made for specific categories of Meyer's expenses.

The Court can quickly dispense of FLC's two principal arguments in opposition to an award of costs. First, the judgment itself does not preclude an award of costs because it covered only the fees and costs that Meyer requested as part of their counterclaims, and not the costs to which they would be entitled as a prevailing party. Second, although Meyer did not file a bill of costs with the Clerk as required under Local Rule 54.1, it did attach a copy of certain bills and invoices to its papers in support of this motion, and has made this documentation available to FLC since the filing of their moving papers. Thus, except for the specific circumstances addressed in detail below, Meyer's failure to strictly adhere to the requirements of Local Rule 54.1 will not preclude them from recovering reasonable costs. For its part, Meyer contends that it should be awarded all of its claimed costs by virtue of being the prevailing party in a Lanham Act action. However, recovery is not quite so automatic as Meyer appears to contend, and

5

because I agree with FLC that certain categories of costs for which Meyer seeks reimbursement were not "necessary for the representation of the client" in this case, *see Tri-Star*, 42 F. Supp. 2d at 306, certain deductions to Meyer's costs must be made.

### *(a) Daily Trial Transcripts*

Meyer seeks to tax costs in the amount of $13,000 for daily transcripts of the August 2009 trial. To determine whether daily transcripts are taxable costs, "[t]he relevant inquiry is whether the transcripts . . . were necessary for defendant's use in the case." *Bucalo v. East Hampton Union Free Sch. Dist.*, 238 F.R.D. 126, 129 (E.D.N.Y. 2006). Factors to consider in determining whether the transcripts were necessary include the length and complexity of the case, whether more than one attorney for the requesting party was present at the trial, whether the transcript was a mere convenience and other extraordinary circumstances. *Id.* "Trial transcripts are rarely necessary for trials that are not particularly long or complex," *id.*; *Gabel v. Richards Spears Kibbe & Orbe LLP*, 07 Civ. 11031, 2009 U.S. Dist. LEXIS 108311, at *4-5 (S.D.N.Y. Nov. 17, 2009), and costs for daily trial transcripts are rarely granted where more than one attorney was present for each day of trial such that one attorney could have been taking notes, *see, e.g.*, *Bucalo*, 238 F.R.D. at 129; *Malloy v. City of N.Y.*, No. 98-CV-5823, 2000 U.S. Dist. LEXIS 8673, at *2-3 (E.D.N.Y. June 23, 2000). Thus, cases where transcripts have been taxed as costs have generally involved "extraordinary circumstances," such as an exceedingly long and complex or confusing trial. *See, e.g., Perks*, 2008 U.S. Dist. LEXIS 108845 at *10-13. These costs are routinely denied, however, where the prevailing party provides no reason why they were "necessary," as opposed to simply convenient. *E.g., Natural Organics, Inc. v. Nutraceutical Corp.*, 01 Civ. 0384 (GBD) (RLE), 2009 U.S. Dist. LEXIS 71077, at *15 (S.D.N.Y. Aug. 6, 2009); *Mobasher v. Bronx Cmty. College of the City Univ. of N.Y.*, 01 Civ. 8636 (WCC), 2008 U.S. Dist. LEXIS 57470, at *7-8 (S.D.N.Y. July 28, 2008).

Here, Meyer has not shown why daily trial transcripts were necessary. Although daily transcripts were no doubt convenient, the trial in this case was not overly lengthy or complicated, and one of Meyer's team of attorneys (of which there were no fewer than five on any given trial day) could have been taking notes on the proceedings. Accordingly, I will deduct $13,000 from Meyer's award of costs.

### *(b) Deposition Transcripts*

Pursuant to Local Rule 54.1, the cost of an original deposition transcript and one copy is taxable "if the deposition was used or received in evidence at the trial, whether or not it was read

6

in its entirety." Local Civ. R. 54.1(c)(2). However, "[t]he plain language of [Local Rule 54.1's] first sentence, providing that depositions are taxable if 'used or received in evidence at the trial,' suggests that the word 'use' extends well beyond explicit reliance on the deposition as a basis for decision." *Whitfield v. Scully*, 241 F.3d 264, 271 (2d Cir. 2001). Indeed, it is now well-established that a deponent's testimony at trial "alone is sufficient to end the inquiry as to whether their depositions were 'used' at the trial." *Perry v. Metropolitan Suburban Bus Auth.*, 236 F.R.D. 110, 112 (E.D.N.Y. 2006).

Moreover, the costs of depositions not used at trial are still taxable under 28 U.S.C. § 1920(2) where they "appear to have been reasonably necessary to the litigation at the time they were taken." *Malloy*, 2000 U.S. Dist. LEXIS 8673 at *4 (quoting *Cush-Crawford v. Adchem Corp.*, 94 F. Supp. 2d 294, 303 (E.D.N.Y. 2000)); *see also United States Media Corp. v. Edde Entm't, Inc.*, 94 Civ. 4849 (MHD), 1999 U.S. Dist. LEXIS 10605, at *29 (S.D.N.Y. July 14, 1999) ("It suffices that at the time the deposition was taken, it was reasonably expected that the transcript would be used for trial preparation."). Accordingly, "the proper inquiry is whether, at the time the deposition was taken, it appeared to be reasonably necessary." *Anderson*, 132 F. Supp. 2d at 246. However, depositions taken "solely for discovery" or for the convenience of counsel are not taxable. *E.g., Natural Organics*, 2009 U.S. Dist. LEXIS 71077 at *17.

Even where the cost of a deposition transcript itself will be taxable under these standards, certain associated fees that are not necessary generally may not be taxed – for example, expedited service,[2] delivery costs, appearance fees, and rough diskettes and/or ASCII disks. *E.g., J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, 03 Civ. 1548 (GBD) (AJP), 2008 U.S. Dist. LEXIS 82085, at *69 (S.D.N.Y. Oct. 17, 2008) ("[A] 'rough disk' – a value-added, expedited transcript service – is rarely recoverable as a cost."); *Mobasher*, 2008 U.S. Dist. LEXIS 57470 at *10 (denying costs for overnight shipping because "not only is the cost unnecessary, but shipping fees are not provided for under Local Civil Rule 54.1"); *Yin v. Japan Society, Inc.*, 99 Civ. 4806 (HB), 2000 U.S. Dist. LEXIS 8828. at *7-8 (S.D.N.Y. June 27, 2000) (deducting "appearance fee" and "delivery fee" from costs of deposition transcripts).

In this case, Meyer seeks a total of $39,481.58 in costs associated with depositions: $39,050.04 for deposition transcripts and $431.54 for "depositions (miscellaneous)." This latter

---

[2] An exception to this rule has been found where the deadlines of the case and/or timing of the depositions illustrated that expedited service was reasonably necessary. *See, e.g., Forest Labs., Inc. v. Abbot Labs.*, 96-CV-159S, 2006 U.S. Dist. LEXIS 33743, at *6 (W.D.N.Y. May 16, 2006) (allowing costs for expedited service when depositions taken just before or during trial).

7

expense must be deducted, as any taxable costs related to depositions do not cover any "miscellaneous" expenses. *See* Local Civ. R. 54.1(c)(2) (providing for costs for transcript and one copy). As to the costs for the deposition transcripts themselves, Meyer seeks costs for 22 witnesses' depositions. It seems fair to find that at the time of each of these depositions, Meyer reasonably expected that the transcripts would be used at trial. *See Anderson*, 132 F. Supp. 2d at 246. Indeed, 17 of the deposed witnesses actually testified at trial, either live or by deposition designation. *See Perry*, 236 F.R.D. at 112. Accordingly, these deposition costs are taxable. However, in attempting to tax the full invoice value of their deposition costs, Meyer has included untaxable costs including RealTime service, delivery, appearance fees, rough disks and expedited service. Accordingly, the Court will deduct $7,753.50 to account for these unrecoverable deposition costs. Additionally, Meyer seeks to recover costs for the deposition of Suzanne Murphy for a total $302.00, but fails to submit an invoice to support that cost.[3] The cost of the Murphy deposition likewise will not be allowed. Thus, the total deposition costs for which Meyer will be permitted to recover from FLC is $30,994.54.

### (c) Counsel's Travel Expenses and Local Counsel Fees

Meyer seeks to recover $85,537.09 for travel and lodging for its counsel, who are located in Chicago. Although travel and lodging is not an enumerated category of taxable costs in § 1920 or Local Rule 54.1, there is authority that suggests that such costs are recoverable, especially in Lanham Act cases. *See, e.g.*, *Tri-Star*, 42 F. Supp. 2d at 306; *see also Kuzma v. I.R.S.*, 821 F.2d 930, 933-34 (2d Cir. 1987) (finding "[i]dentifiable, out-of-pocket disbursements for items such as . . . travel" to be compensable). However, such costs are not automatically reimbursable, and numerous courts have denied travel and lodging costs when "it is not clear that out-of-state counsel's attendance was necessary at the proceedings." *Motorola, Inc. v. Abeckaser*, 07-cv-3963 (CPS), 2009 U.S. Dist. LEXIS 87803, at *20 (E.D.N.Y. Aug. 5, 2009); *see also Simmons v. New York City Transit Auth.*, CV-02-1575, 2008 U.S. Dist. LEXIS 16949, at *22 (E.D.N.Y. Mar. 5, 2008) (denying award of out-of-state counsel's travel expenses, noting that "[w]hile the Court recognizes [a party's] right to retain counsel of her choice, she has failed to explain the need for out-of-state counsel when presumably, a local attorney with similar trial experience could be located"), *vacated on other grounds*, 575 F.3d 170 (2d Cir. 2009); *Cartier Int'l B.V. v. Gorski*, Civ. No. 3:01CV 01948 (PCD), 2003 U.S. Dist. LEXIS 27709, at *15 (D.

---

[3] The Murphy deposition cost was itemized on Meyer's spreadsheet of total costs submitted in support of its instant motion. The transcript for the deposition was prepared by a different reporting service than the remainder of the depositions, and the invoice for that charge was not attached, as were the invoices for the remaining depositions.

8

Conn. Apr. 30, 2003) (denying award of travel expenses because "Plaintiffs choice of non-local counsel does not warrant the consequent additional expense being charged to Defendants"). I am persuaded by this latter line of authority and find that Meyer's costs for its Chicago counsel's travel and lodging in New York City were not strictly necessary and thus not recoverable as costs. Accordingly, I will deduct $85,537.09 from Meyer's costs.

Meyer's request for "costs" in the amount of $78,311.37 for its local counsel's fees warrants only brief address. It is beyond peradventure that where a prevailing party is not otherwise entitled to attorneys' fees, it cannot then seek to collect its local counsel's fees as a taxable cost. Meyer has cited no cases to the contrary, and this Court's research has revealed none. Thus, I will deduct $78,311.37 from Meyer's costs.

### (d) Expert Witness Fees

Meyer seeks to recover a staggering $91,176.54 that it paid to its expert witnesses. While the work of these experts was undoubtedly important in mounting Meyer's defense to FLC's Lanham Act claim, "[u]nder well established principles of law, however, these expenses are not recoverable, except to the extent of the $40 per day statutory fee and travel expenses for witnesses in general." *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 137 F. Supp. 2d 351, 360 (S.D.N.Y. 2001) (citing 28 U.S.C. § 1821(b)). As the Supreme Court has found, a prevailing party may not recover expert witness fees unless a statute or contract between the parties explicitly provides for the recovery of such fees. *See West Virginia Univ. Hosps., Inc. v. Casey*, 499 U.S. 83, 86-87 (1991); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987); *see also United States ex rel. Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996) ("We are at a loss to see how Evergreen could seek [expert witness fees] in light of *Crawford* and [*Casey*]."); Local Civ. R. 54.1(c)(3) ("Fees for expert witnesses are taxable only to the extent of fees for ordinary witnesses unless prior court approval was obtained."). There is no statutory provision in the Lanham Act that explicitly provides for the recovery of expert witness fees.

Here, Meyer's expert Nicholas Didow was deposed for two days but did not testify at trial; Didow's fees will be limited to $80. Meyer's expert Gary Ford was deposed for one day and testified at trial for one day; Ford's fees will be limited to $80. Likewise, Meyer's expert Bobby Calder was deposed for one day and testified at trial for one day; Calder's fees will be limited to $80. Although travel and lodging expenses for expert witnesses likely are within the ambit of taxable costs, *see Harbor Software, Inc. v. Applied Sys., Inc.*, 92 Civ. 8097 (HB), 1997

U.S. Dist. LEXIS 4860, at *9 (S.D.N.Y. Apr, 15, 1997), Meyer provided no information as to its witnesses' travel expenses and did not indicate whether they were forced to stay away from home to be able to attend the depositions or trial, and I will therefore make no award for subsistence or travel for these expert witnesses, *see United States Media Corp.*, 1999 U.S. Dist. LEXIS 10605 at *26. Likewise, because Meyer has not indicated whether any of its experts was present at trial on days when they did not testify, the Court cannot award a *per diem* cost based on any additional days. *See id.* Accordingly, Meyer's reimbursable expert witness fees will be limited to $240.00.

### *(e) Trial Consultants, IT Specialists and Trial Equipment*

Finally, Meyer seeks to recover its costs for its trial consultants ($26,439.50), IT trial specialists ($27,279.00) and trial equipment rental ($3,840.00). As to the IT specialists' fees, while it may well be that the specialists performed important work, Meyer has not submitted any invoices or descriptions of the work that its specialists performed. Without an understanding of what work was done or how important it might have been to the trial, I must deny Meyer's requests for costs for its trial consultants in the amount of the full $27,279.00. With respect to the trial graphics equipment and trial consultants, who, based on Meyer's invoices, prepared at least the lion's share of the trial graphics presented at trial, I am inclined to agree with Judge Chin's recent pronouncement that "the use of technology to improve the presentation of information to the jury and/or to the bench should be supported" and that "[c]omputers, computer graphics, digitized documents and other technological advancements have become important tools to the modern-day trial lawyer." *DiBella v. Hopkins*, 407 F. Supp. 2d 537, 540 (S.D.N.Y. 2005) (Chin, J.). Thus, "[a]s long as the cost is reasonable and the devices aid in the efficient and effective presentation of evidence, a prevailing party should be allowed to recover their expense." *Id.* Here, the documentary exhibits were voluminous and the various visual aids that were presented at trial were helpful to the jury and the Court in focusing attention on the salient documents and concepts. Accordingly, Meyer is entitled to recover its reasonable costs for equipment and technological graphics. In part because the remaining trial graphics costs, which amount to $30,279.50, are supported by invoices that Meyer paid, and in part because without the graphics the jury would have had a much more difficult time finding the facts in this matter, I will allow $25,000 as a reimbursable cost.

## II. CONCLUSION

For the foregoing reasons, Meyer's motion for attorneys' fees is DENIED. Meyer's motion for costs is GRANTED to the extent discussed in this opinion. Accordingly, the Clerk of this Court is instructed to assess costs in favor of Meyer in the amount of $87,572.67. The Clerk of this Court is instructed to close this motion (Docket No. 175) and, judgment having been entered in this case on October 13, 2009, the Clerk is further instructed to close this case and remove it from my docket.

**IT IS SO ORDERED.**
New York, New York
December 29, 2009

_____
U.S.D.J.

11